O'CONNER *v.* BAMM.

1. CONTRACTS—CARE AND KEEP—EVIDENCE.

Oral contract whereby plaintiff was to be supported by the defendants for the remainder of her life *held,* not proved, where testimony shows no time or place when terms of such alleged verbal contract were discussed or agreed upon, no promises were made by defendants and that plaintiff parted with nothing of value in pursuance of any agreement.

2. SAME—RESCISSION—LAND CONTRACT—CARE AND KEEP—BREACH OF CONTRACT.

Rescission of written agreement whereby defendants purchased home of plaintiff, a 71-year-old widow, and were to support her for a 5-year period is not decreed, where record fails to show a breach of a substantial part of the contract, unconscionable conduct, fraud or mistake or evidence presenting a basis for assessment of damages.

3. SAME—PARTIAL FAILURE OF PERFORMANCE—RESCISSION.

Not every partial failure to comply with the terms of a contract by one party will entitle the other party to abandon the contract at once; rescission being permissible when there is a failure to perform a substantial part of the contract or one of its essential items, or where the contract would not have been made if default in that particular had been expected or contemplated.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Support of Persons § 3 *et seq.*

[2, 3] 9 Am Jur, Cancelation of Instruments § 31; 50 Am Jur, Support of Persons §§ 22, 28–30.

[2, 3] Deed in consideration of support of grantor as creating an estate upon condition or a conditional limitation. 76 ALR 742.

Remedy of rescission for grantee's breach of agreement to support. 112 ALR 670.

Appeal from Monroe; Golden (Clayton C.), J. Submitted October 9, 1952. (Docket No. 36, Calendar No. 45,470.) Decided January 5, 1953.

Bill by Grace O'Conner against Ernest Bamm and others for accounting, injunction restraining summary proceedings and to set aside agreement. Bill dismissed on payment of $185.81 to clerk of court. Plaintiff appeals. Affirmed.

*Harold E. Bledsoe,* for plaintiff.

*John J. Beck,* for defendant.

ADAMS, J. Prior to March 6, 1946, the plaintiff, Grace O'Conner, and the defendants, Ernest and Marie Bamm, were neighbors living in Monroe county, Michigan. Mrs. O'Conner was a widow some 71 years of age and in poor health. She owned and lived in a home acquired by her and her husband in 1919. Her brother-in-law who lived with her was likewise in poor health and she decided it would be necessary to sell the home both because she was unable to care for it and because she needed money to live.

The Bamms offered to buy the home and she asked $3,500. An agreement was finally reached and the sale completed, Mrs. O'Conner conveying the property to the Bamms and they in turn paying to her $1,500 in cash, together with an agreement in writing which read:

"NOTE
　　　　　　　　"Monroe, Michigan
　　　　　　　　"March 6, 1946
"For value received, we promise to pay to Mrs. Grace O'Conner, survivor of her deceased husband, Andrew O'Conner, the sum of $25 per month, without interest, upon sums duly paid, but with interest

at the rate of 5% per annum on any delinquent sums for a period of not to exceed 60 months nor to exceed the life of Grace O'Conner;—meaning to promise hereby that if Mrs. O'Conner shall live for 60 months from date, that $25 will be paid each of those 60 months, but in event of her death prior to the expiration of said 60 months, all payments and all duty to pay shall expire at her demise, and that at her death no moneys shall be due her nor her estate hereunder, if she shall die within the said 5-year period, except any delinquencies, if any, that might exist at her death in the regular schedule of payments.

"This note and undertaking is given and accepted as a part consideration purchase price of property this day bought from her and also upon the consideration that is a part of the purchase price in cash, and also by means of this note; there is also being given her an agreement of support within our home not to exceed the 5-year period.

"This instrument is accepted by Grace O'Conner with full understanding of the same.

"ERNEST W. BAMM, sgd.
"MARIE R. BAMM, sgd.

"I certify that I have read, understand and acknowledged the within instrument with full knowledge of its meaning, and that I have dictated the terms therein myself.

"sgd.   GRACE O'CONNER

"I Witness to All Signatures
"EDGAR E. GORDEN, sgd.
"Monroe, Michigan."

Thereafter the Bamms moved into the home with Mrs. O'Conner and the agreement of March 6, 1946, seems to have been performed to the mutual satisfaction of both parties until a few months prior to the expiration of the 5-year period of support therein provided. Up until that time, according to the record, the most friendly relationship existed between the parties, courtesies and kindnesses were ex-

changed, Mrs. O'Conner was called "Auntie Grace" by the Bamms, and no complaints were voiced by any of the parties with reference to nonperformance of the contract.

An incident then occurred in the home involving the disciplining of one of the Bamm children and from then on the parties were at odds and dissatisfaction developed. Sometime during the winter or spring of 1951 the Bamms turned off the water supply and the heat to the 2 rooms occupied by Mrs. O'Conner. Later, a friend of Mrs. O'Conner attempted to intervene and after some negotiations the Bamms offered to pay the $65 balance due under the terms of the agreement, together with interest and some other money owed her. The money was refused by Mrs. O'Conner who claimed that they still owed interest. Shortly thereafter, the 5-year period of support having expired, eviction proceedings were instituted by the Bamms against Mrs. O'Conner.

This action in chancery was then commenced by Mrs. O'Conner alleging that subsequent to the execution of the written agreement of March 6, 1946, the Bamms had verbally agreed to provide a home for Mrs. O'Conner for so long as she lived, and further alleging a breach of both the written and verbal contracts. The bill of complaint concluded with a prayer for an accounting, setting aside the sale of the home and a stay of the eviction proceedings. Defendants filed an answer alleging performance of the written agreement and denying the existence of the subsequent verbal agreement.

Upon trial, the defendants moved to dismiss the bill of complaint at the conclusion of the plaintiff's testimony and the trial judge granted that motion on condition that the sum of $185.81 be paid by the Bamms to the clerk of the court for the benefit of Mrs. O'Conner. This sum included the balance due

under the agreement, payment of a loan made by Mrs. O'Conner to the Bamms, and the balance due on the purchase of certain furniture. Plaintiff appeals from that order.

The bill of complaint does not allege nor does the record show any fraud or intentional wrongdoing on the part of the Bamms.

Plaintiff claims that a second and verbal agreement was reached by the parties providing for her support during her lifetime, that this agreement was based upon additional undertakings performed by the plaintiff, and that such agreement was breached when the Bamms attempted to evict Mrs. O'Conner from the property in the spring of 1951. While these claims are made by the plaintiff in her bill of complaint, the testimony of the plaintiff and her supporting witnesses failed to disclose any of the essential elements necessary to a valid contract. The testimony shows no time or place when terms of the alleged verbal contract were discussed or agreed upon. No promises were made by the Bamms. Mrs. O'Conner parted with nothing of value in pursuance of any agreement. In fact, the record clearly indicates the absence of any verbal contract as shown by the following excerpts from the testimony of Mrs. O'Conner:

"I thought I was to have a home as long as they had one; I thought if they were good enough to do that, if she owned a car—he had the car, a lots of times she wanted to use my car when he was working, and I thought, well, I had no one else, I will give it to her and then she will have it to use; Mr. Bamm never said to me: 'If you give us this car we will see that you can live with us for the rest of your life.' I can't tell how much of that $1,500 was paid directly to the Bamms; none was paid to them at their request. * * *

"I ate with them until I got my stove, you know, and then I had my stove put in and then I done my cooking. I thought this way, as long as they were going to give me a home as long as they had one, that I didn't want to be under any expense to them, so I thought it would be better if I paid my own expense. They didn't say I had to do my own cooking, no, but they were willing I should, because they told me I could have those 2 rooms to live in. I was ill several times during the past 5 years, I think 3 times in the 5 years. Mrs. Bamm took care of me partly. We never had no disagreement until last winter; I wouldn't say what month."

The plaintiff further claims that the conveyance of the property should be set aside because the defendants had not fully performed under the terms of the written agreement, alleging both failure to support her adequately and nonpayment of the balance due. Here again the record is not convincing. She testified, in part:

"I didn't complain to the Bamms at all. The Bamms were not supporting me. Mr. Bamm did not ask me for that $100 for the furnace; I loaned him $100 for that water heater. * * * I did not complain to Mr. Bamm about the heat not being in my room. There is a register in both rooms; I suppose it could be turned on in my room. I never paid no attention."

There was a small balance still owing to Mrs. O'Conner under the terms of the written contract and there were at least 2 other minor unpaid obligations owing to her which might well have been the basis for an action at law to recover money damages.

The record further indicates that possibly during the last few months prior to the expiration of the 5-year period, defendants refused certain items of support against the wishes of the plaintiff. She testified that they turned the heat off in her quarters

and refused to allow her to use the inside toilet. The record does not show exactly when these refusals on defendants' part began. Plaintiff introduced no evidence from which damages in respect to this alleged breach could be assessed, nor does she request incidental damages in her prayer.

We find the record barren of any showing of a breach of a substantial part of the contract, unconscionable conduct, fraud or mistake which could have been used as a proper basis for granting rescission of the agreement.

" 'It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once.'

"Rather rescission is permissible when there is a failure to perform a substantial part of the contract or one of its essential items, or where 'the contract would not have been made if default in that particular had been expected or contemplated.' " *Rosenthal* v. *Triangle Development Co.*, 261 Mich 462.

Plaintiff says that she relies on a precedent established in this Court by *Kendall* v. *Chase*, 203 Mich 660. We fail to find any common ground between the instant situation and the facts in that case. There, the Court was concerned with the interpretation of an admittedly valid written agreement to support "during the term of her natural life," while the present case involves the alleged breach of a contract providing for a 5-year period of support.

We believe that the court made a very proper observation at the conclusion of the plaintiff's testimony when he said:

"If the court were permitted to operate on sympathy, I probably would give the plaintiff in this case some relief; but the law very strictly holds the court away from sympathy. I must be guided solely by the law as it is written."

The decree of the trial court will be affirmed, with costs to appellees.

Dethmers, C. J., and Butzel, Carr, Bushnell, Sharpe, Boyles, and Reid, JJ., concurred.