# STATE OF MICHIGAN

# COURT OF APPEALS

DALE PAPE and DAWN OSMENT,

        Plaintiffs-Appellants,

v

MARK DOBRONSKI, SUSAN DOBRONSKI,
FERROVIA, LLC and ADRIAN & BLISSFIELD
RAILROAD COMPANY,

        Defendants-Appellees,

and

ARTHUR W. SINGLE, II and IRWIN HOWARD
SMITH,

        Defendants.

UNPUBLISHED
May 28, 2015

No. 320552
Wayne Circuit Court
LC No. 12-004057-CZ

Before: MURPHY, P.J., and STEPHENS and GADOLA, JJ.

PER CURIAM.

Plaintiffs, Dale Pape and Dawn Osment, appeal by leave granted, the orders denying plaintiffs' motion to rescind a settlement agreement and granting defendant Adrian & Blissfield Railroad Company's (Railroad) motion to enforce the same settlement agreement. *Pape v Dobronski*, unpublished order of the Court of Appeals, entered June 18, 2014 (Docket No. 320552). We vacate and remand for an evidentiary hearing.

This litigation initiated as a shareholder oppression action by plaintiffs as minority shareholders in the Railroad, with Pape and Osment each holding 1,250 shares of stock. Defendants Mark Dobronski and Susan Dobronski own defendant, Ferrovia, LLC, which retains 8,750 shares of the Railroad's stock.[1] The Railroad operates approximately 20 miles of rail lines within Lenawee County. Following the filing of several motions for summary disposition, the

---

[1] While defendants Arthur W. Single, II and Irwin Howard Smith are not participants in this appeal, we note that the lower court record indicates that they maintain 2,500 shares and 3,750 shares, respectively, of the Railroad's stock.

-1-

parties elected to enter into a stipulated order of dismissal after having effectuated a settlement agreement for the sale of the Railroad's stock, rather than proceed with the litigation.

"Equitable issues, such as arguments for rescission or reformation, are . . . reviewed de novo." *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013). Issues pertaining to contract interpretation also present questions of law that are reviewed de novo. *Rory v Cont'l Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). A trial court's decision to enforce a settlement agreement is reviewed for an abuse of discretion. *Groulx v Carlson*, 176 Mich App 484, 493; 440 NW2d 644 (1989). "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (citation and quotation marks omitted). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id*. (Citation and quotation marks omitted).

Plaintiffs contend the trial court erred in denying their motion to rescind the settlement agreement pertaining to the purchase of the Railroad stock and in granting defendants' motion to enforce the same agreement, premised on the lack of cooperation of defendants and their purposeful and obstructive behavior precluding plaintiffs' ability to perform the terms of the agreement. We agree.

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006) (citation omitted). A valid contract requires an offer, acceptance, and mutual agreement or a meeting of the minds to all of the contract's essential terms. *Id*. at 452-453; *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 149; 662 NW2d 758 (2003). Further, a contract for the settlement of pending litigation that conforms to the requirements of contract principles will not be enforced unless the agreement also complies with the requirements of MCR 2.507(G).[2]

"A court acting in equity looks at the whole situation and grants or withholds relief as good conscience dictates." *McFerren v B & B Inv Group (After Remand)*, 253 Mich App 517, 522; 655 NW2d 779 (2002) (citation and quotation marks omitted). The primary objective of rescission is to return litigants to their status quo. *Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995). Specifically:

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have

---

[2] To be enforceable, an agreement must be "made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney." MCR 2.507(G).

occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the status quo. [*Id.* at 102-103, quoting *Cunningham v Citizens Ins Co of America,* 133 Mich App 471, 479; 350 NW2d 283 (1984).]

"Rescission of a contract is permissible only for a substantial or material breach," *Hisaw v Hayes*, 133 Mich App 639, 642; 350 NW2d 302 (1984), citing *O'Conner v Bamm*, 335 Mich 438, 444; 56 NW2d 250 (1953), or when there is "a misrepresentation . . . made with the intent to mislead or deceive", *Hungerman v McCord Gasket Corp*, 189 Mich App 675, 677; 473 NW2d 720 (1991). "An innocent misrepresentation is insufficient to invalidate a release[,]" but "[w]here fraud or mistake is alleged, the intent of the parties should be considered." *Id.* In *Omnicom of Mich v Giannetti Inv Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997), this Court elucidated the factors a court should consider to ascertain whether a breach is material:

In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the wilfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. [Internal citations omitted.]

It is clear, from the lower court record and the plethora and content of the pleadings, that the parties harbored great animosity and distrust for each other. Defendants continuously questioned plaintiffs' ability to obtain financing and plaintiffs went so far as to express their beliefs that defendants were deliberately sabotaging the financing within weeks of the settlement. Plaintiffs put forth arguments that defendants were in breach of the settlement agreement's cooperation provisions, which stated:

[The Railroad] and the individual shareholders will fully cooperate in the drafting and implementation of the definitive transactional documents for the stock purchase in a timely manner.

* * *

Mutual Cooperation. The Parties will cooperate with one another as may be reasonably necessary to effectuate the terms of this Agreement, to the extent that if additional documents are reasonably necessary to carry out the terms of this Agreement, the Parties will execute same. If consent of one Party is required to take some action by the other Party or by a third-party, the Parties agree that neither one of them will unreasonably withhold consent.

While there exist more than enough allegations regarding wrongdoing or dilatory conduct by all concerned, the fact of the matter is that the trial court did not address or evaluate the repeated claims of plaintiffs that defendants were uncooperative and that their lack of cooperation was seriously impeding plaintiffs' ability to perform.

Plaintiffs presented three separate affidavits to the trial court, by Terese Hunwick, Ted Mills and Rene M. L. Hansemann, all averring to the difficulties they encountered in securing required documents from defendants and opining that defendants did not intend to cooperate in or desire a sale of the stock. While not dispositive, the affidavits do raise a question of fact regarding defendants' lack of cooperation and whether this behavior comprised a material breach of the purchase agreement. Of particular note is the repeated assertion by defendants, supported by the mediator, that they could not release a copy of the Norfolk Southern lease or other client information to the lender for a due diligence review, despite the existence of or willingness to execute a nondisclosure agreement, premised on the terms of the lease and an unspecified provision in federal law. What is difficult to reconcile is, despite an initial refusal by Mark Dobronski to release this same information to Hunwick, that the materials were made available to Hunwick following the intervention of Robert L. Hindelang, in his role as mediator, to conduct her valuation of the Railroad. Defendants' assertion that plaintiffs were aware of this discrepancy in the release of materials but failed to bring such information to the knowledge of the trial court is irrelevant. It is the discrepancy in revealing the information to Hunwick but not the lender that is important to a determination of defendants' cooperation and possible breach of the purchase agreement. Of further significance is Hunwick's observation that representations made to her by Mark Dobronski did not accurately coincide with documentation received. Hence, it is understandable that both the lender and plaintiffs found suspect the Railroad's provision of a "summary" of the Norfolk Southern lease with regard to its accuracy and completeness. What is problematic, in terms of this appeal, is the failure of the trial court to address the affidavits or make any credibility determinations regarding the averments contained therein, thereby rendering the record difficult if not impossible for this Court's review.

Another issue arose pertaining to whether defendants breached the settlement agreement by disposing of assets and obtaining a line of credit, which may have affected the valuation of the Railroad and impeded plaintiffs' ability to secure financing. The Settlement Agreement contained a provision that,

> During the marketing time period, [the Railroad] will be operated in the normal course of business. [The Railroad] will not sell or acquire any substantial asset without first notifying Pape/Osment. Loans to [the Railroad] from shareholders, directors, officers, and/or party related entities and repayment of same are considered operating in the regular course of business.

It was undisputed that the Railroad did sell off some leases or easements during the pendency of the Settlement Agreement, which was not known to plaintiffs. While the parties did dispute the number of leases or easements sold, it remains to be determined whether the sale involved "any substantial assets" in contravention of the purchase agreement terms. Defendants contend that the sale was necessary to continue to finance the operation of the Railroad and, therefore, was "in the normal course of business." But, a factual determination on this matter was never made. Similarly, the lender learned that the Railroad had also secured a $500,000 line of credit with a

pledge of the Dobronski shares as collateral, which also served to hinder the loan. There were a multitude of other allegations and denials regarding defendants' failure to accurately disclose varied Railroad liabilities including a lawsuit with the Michigan Department of Transportation and unpaid taxes, but other than arguments and allegations there was no review or analysis of their truth or falsity or their impact on the ability of plaintiffs to proceed with their efforts to obtain financing for the stock purchase or whether these instances constituted a breach of the provisions of the Settlement Agreement. All of these matters raise further questions when placed in the context of defendants' acknowledgement that entry into the purchase agreement constituted a "bluff" based on their belief that plaintiffs would be unable to perform.

Defendants argue that plaintiffs' multiple motions to enforce the settlement agreement effectively served as a waiver of their subsequent and final request to rescind the settlement agreement. Contrary to defendants' position, which is supported by case law from 1902[3], this Court has since altered the rules regarding an election of remedies. Specifically:

> Today inconsistency in pleadings is permitted, inconsistent remedies may be sought and alternative relief granted. The concept of election of remedies has undergone considerable change in recent years. [*Walraven v Martin*, 123 Mich App 342, 350-351; 333 NW2d 569 (1983) (citation omitted).]

As discussed in greater detail and clarified in *Barclae v Zarb*, 300 Mich App 455, 486; 834 NW2d 100 (2013) (internal citations omitted):

> The election of remedies doctrine is a "procedural rule which precludes one to whom there are available two inconsistent remedies from pursuing both." The purpose of the doctrine "is not to prevent recourse to alternate remedies, but to prevent double redress for a single injury." "In order for the doctrine to apply, three prerequisites must exist: (1) at the time of the election, there must have been two or more remedies available; (2) the alternative remedies must be inconsistent rather than consistent and cumulative; and (3) the party must have chosen and pursued one remedy to the exclusion of the other(s)." A plaintiff may, however, simultaneously pursue all available remedies regardless of their legal consistency, if the plaintiff does not obtain a double recovery.

The trial court never directly addressed these issues other than to direct the disclosure or nondisclosure of certain documents or to extend the agreed upon deadlines for performance. The trial court did not truly address or discuss the various delays asserted other than to suggest that neither party would benefit from dilatory conduct, and did not make any factual determinations regarding the delays and whether they were unavoidable or unreasonable and constituted a breach of a provision of the Settlement Agreement.

Due to the paucity of factual findings by the trial court regarding allegations by plaintiffs that defendants were purposefully dilatory and uncooperative, and whether such behavior constituted a "substantial" or "material" breach of the Settlement Agreement or fraud, we find it

---

[3] See *Cable Co v Wasegizig*, 130 Mich 387, 391-392; 90 NW 24 (1902).

necessary to remand the matter to the trial court for an evidentiary hearing. At this point, while there are a lot of allegations and documents, there is an absence of rulings and analysis for this Court to conduct a proper review.

Vacated and remanded to the trial court for an evidentiary hearing. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens
/s/ Michael F. Gadola