OMNICOM OF MICHIGAN v GIANNETTI INVESTMENT COMPANY

Docket No. 184456. Submitted September 18, 1996, at Detroit. Decided January 31, 1997, at 9:30 A.M.

Omnicom of Michigan brought an action in the Wayne Circuit Court against Giannetti Investment Company (GIC), Silvio Giannetti, and Jerry and Anne Marie Pruzinsky, alleging breach of contract with regard to the plaintiff's provision of cable television service to an apartment complex owned and operated by GIC. The individual defendants are general partners of GIC. GIC and Silvio Giannetti (hereafter defendants) counterclaimed, seeking compensation for damages caused during the cable installation. The plaintiff had entered into an installation agreement with Anne Marie on April 5, 1991, and an access agreement with Jerry on June 1, 1991. When Silvio Giannetti learned of the contracts, he denied the plaintiff access to the property in violation of the access agreement. The plaintiff was then unable to repair a signal leakage problem and was forced to discontinue the cable service. The court, William Leo Cahalan, J., granted partial summary disposition for the plaintiff, enjoined the defendants from interfering with the plaintiff's rights under the access agreement, and ordered the defendants to pay damages for breach of the agreement. The court also ordered the plaintiff to compensate the defendants for the repairs necessitated by the plaintiff's operations at the apartment complex. The defendants appealed.

The Court of Appeals *held*:

1. The trial court properly found that, because there was no genuine issue of material fact that a general partner signed the access agreement for the benefit of the partnership and in the course of the partnership's business, the plaintiff was entitled to summary disposition with regard to the issue whether the access agreement was binding on GIC. MCL 449.9(1); MSA 20.9(1) may be interpreted to allow a partnership to be bound where a general partner signs his own name rather than the partnership name in such a situation.

2. The intent of the parties, gleaned from the installation and access agreements, was that the plaintiff was to be liable for all damages it caused, except damage to the defendants' sprinkler system.

3. The trial court properly found that the plaintiff's breach of contract was not material and, therefore, the defendants were not entitled to rescission of the contract.

Affirmed.

1. PARTNERSHIP — CONTRACTS.

A general partnership may be bound where a general partner signs an agreement for the benefit of the partnership and in the course of the partnership business; MCL 449.9(1); MSA 20.9(1) may be interpreted to allow a partnership to be bound where a general partner signs the general partner's own name to an agreement rather than the name of the partnership.

2. CONTRACTS — SUBSEQUENT CONTRACTS.

The intention of the parties must be gleaned from all the agreements where there are several agreements relating to the same subject matter; if parties to a prior agreement enter into a subsequent agreement that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the second agreement supersedes and rescinds the first agreement.

3. CONTRACTS — MATERIALITY OF BREACH — ELEMENTS.

There must be a material breach affecting a substantial or essential part of a contract in order to warrant rescission of the contract; a court should consider the following in determining whether a breach is material: whether the nonbreaching party obtained the benefit it reasonably expected to receive; the extent to which the nonbreaching party may be adequately compensated for damages for lack of complete performance; the extent to which the breaching party has partly performed; the comparative hardship on the breaching party in terminating the contract; the wilfulness of the breaching party's conduct; and the greater or lesser uncertainty that the breaching party will perform the remainder of the contract.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *K. Scott Hamilton*), for the plaintiff.

*Miro Miro & Weiner, P.C.* (by *Gary J. Bazydlo*), for Giannetti Investment Company and Silvio Giannetti.

Before: WAHLS, P.J., and FITZGERALD and L. P. BOR-
RELLO*, JJ.

PER CURIAM. Defendants Giannetti Investment Com-
pany (GIC) and Silvio Giannetti appeal as of right a
March 9, 1995, order enjoining them from interfering
with plaintiff's rights under an access agreement and
ordering them to pay plaintiff damages for breach of
the agreement. Defendants also appeal the trial
court's order granting plaintiff partial summary dispo-
sition.[1] We affirm.

Giannetti Investment Company is a general partner-
ship formed by defendant Silvio Giannetti and his
wife. GIC owns and operates an apartment complex
known as Brougham Manor Apartments. Giannetti's
daughter and son-in-law, defendants Anne Marie and
Jerry Pruzinsky, are also general partners of GIC. On
April 5, 1991, Anne Marie entered into an installation
agreement with plaintiff, a provider of cable televi-
sion services. On June 1, 1991, Jerry entered into an
access agreement with plaintiff, giving plaintiff the
right to enter Brougham Manor for purposes of
installing, maintaining, and promoting the cable ser-
vice. When Silvio Giannetti learned of the contract, he
denied plaintiff access to the property in violation of
the access agreement. Plaintiff was unable to repair a
signal leakage problem and was forced to discontinue
the cable service. Plaintiff brought this breach of con-
tract action. Defendants counterclaimed, seeking
compensation for damage to property caused during
the cable installation.

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] The term "defendants" refers only to GIC and Silvio Giannetti.

Defendants first claim that the trial court erred in granting summary disposition to plaintiff regarding the issue whether the access agreement was binding on GIC. A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Lash v Allstate Ins Co*, 210 Mich App 98, 101; 532 NW2d 869 (1995). The court must consider the pleadings, affidavits, depositions, and other documentary evidence available to it and grant summary disposition if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.* This Court reviews summary disposition decisions de novo. *G&A Inc v Nahra*, 204 Mich App 329, 330; 514 NW2d 255 (1994).

Defendants argue that, although Jerry was a general partner, he did not sign the agreement in the partnership name and thereby failed to bind GIC. The Uniform Partnership Act, MCL 449.1 *et seq.*; MSA 20.1 *et seq.*, provides in pertinent part:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution *in the partnership name* of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority. [MCL 449.9(1); MSA 20.9(1) (emphasis supplied).]

Defendants ask this Court to strictly construe this provision to mean that a partner cannot bind a partnership when the partner signs in his own name rather than the partnership name.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *ABC Supply Co v River Rouge*, 216 Mich App 396, 398; 549 NW2d 73 (1996). If reasonable minds can differ regarding the meaning of a statute, judicial construction is appropriate. *Id.* The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute. *Id.* In construing a statute, the court should presume that every word has some meaning and avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Id.* Courts should avoid a literal construction of a statute that would produce an absurd and unjust result clearly inconsistent with the purposes and policies of the statute. *Siecinski v First State Bank of East Detroit*, 209 Mich App 459, 463-464; 531 NW2d 768 (1995).

Michigan courts have not addressed the interpretation of MCL 449.9(1); MSA 20.9(1). However, other states that have enacted the Uniform Partnership Act have not adopted defendants' strict interpretation. The North Carolina Court of Appeals has held that a contract executed in the name of a partner is binding if the other contracting party can show that the partner was acting on behalf of the partnership or that the partnership ratified the individual's act. *Messer v Laurel Hill Associates*, 93 NC App 439, 444-445; 378 SE2d 220 (1989). The Texas Court of Appeals adopted a still broader interpretation when it held that a contract made within the scope of a partner's authority and made for the firm's benefit is binding on the partnership even when executed in the name of one partner only. *Corinth Joint Venture v Lomas & Nettleton*

*Financial Corp*, 667 SW2d 593, 595 (Tex App, 1984). We believe this broad interpretation of MCL 449.9(1); MSA 20.9(1) is necessary to avoid the absurd result of finding that plaintiff had no contract with GIC where it is evidence that plaintiff did not intend to contract with Jerry individually, but rather with the entity responsible for Brougham Manor.

We also reject defendants' argument that the access agreement was not executed in the usual course of GIC's business. In determining whether a certain act is in the course of a partnership's usual business we look not only to the business of that particular partnership, but also to similar partnerships. Crane & Bromberg, Law of Partnership, § 49, pp 276-277. Plaintiff produced evidence that demonstrated that contracting for cable television is a typical activity of apartment complexes in the metropolitan Detroit area. Defendants have not submitted evidence to the contrary. Because there is no genuine issue of material fact that a general partner signed the access agreement for the benefit of the partnership and in the course of the partnership's business, plaintiff was entitled to summary disposition with regard to the issue whether the access agreement was binding on GIC.

Defendants next argue that the June 1, 1991, access agreement, which provided that plaintiff would be responsible for damage caused to defendants' property, superseded the April 5, 1991, installation agreement, which provided that plaintiff would not be responsible for damage to the sprinkler system. When there are several agreements relating to the same subject matter, the intention of the parties must be gleaned from all the agreements. *Culver v Castro*, 126

Mich App 824, 827; 338 NW2d 232 (1983). If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement. *Id.* at 827-828, citing *Nib Foods, Inc v Mally*, 70 Mich App 553, 560; 246 NW2d 317 (1976).

Although the June 1, 1991, access agreement covers a broader range of topics than does the April 5, 1991, installation agreement, both cover the topic of installation. The April 5, 1991, agreement addresses three specific matters relating to installation, including the release of plaintiff's liability for damage to the sprinkler system. The access agreement is a more general and comprehensive agreement, addressing plaintiff's easement for purposes of installation, maintenance, and promotion. The agreements thus relate to the same subject matter, and the parties' intention must be gleaned from both documents. *Culver, supra* at 827. However, the second agreement does not completely cover the subject of the first agreement. The second agreement does not delve into the specific installation matters addressed in the first agreement, namely, the number of outlets per unit, the amount of exposed cable, and the sprinkler system. Hence, the specific provisions of the first agreement were not rescinded by the second agreement. *Nib Foods, supra* at 560. Looking to both documents to glean the parties' intent, it is clear that the parties intended for plaintiff to be held liable for all damage except damage to the sprinkler system. The trial court's interpretation was not erroneous.

Finally, defendants argue that the trial court erred in finding that plaintiff's breach of the contract was not material and that defendants were not entitled to rescission of the contract. We review the trial court's findings of fact for clear error. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 171; 530 NW2d 772 (1995); MCR 2.613(C). We review its conclusions of law de novo. *Oakland Hills Development Corp v Lueders Drainage Dist*, 212 Mich App 284, 294; 537 NW2d 258 (1995).

In order to warrant rescission of a contract, there must be a material breach affecting a substantial or essential part of the contract. *Holtzlander v Brownell*, 182 Mich App 716, 721; 453 NW2d 295 (1990). In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. *Id.* at 722. Other considerations include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the wilfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract. *Walker & Co v Harrison*, 347 Mich 630, 635; 81 NW2d 352 (1957).

The trial court found that plaintiff's failure to repair was not a material breach because defendants prevented plaintiff from completing the repairs. This factual finding was supported by the testimony of plaintiff's general manager that her efforts to discuss repairs with Silvio Giannetti proved fruitless. These

facts support the legal conclusion that the breach was not material. Plaintiff's breach did not prevent GIC from obtaining the benefit of the contract. Brougham Manor was wired for cable, and the service was terminated only because plaintiff was denied access to prevent signal leakage. Defendants' arguments that this was not really a benefit do not alter the fact that plaintiff provided GIC with the service for which it contracted. At most, defendants' arguments indicate that Silvio Giannetti formed the subjective opinion that cable television would be of little value to GIC. Regardless, GIC entered into a contract to acquire cable television and received this benefit.

The second factor, the extent to which GIC may be compensated for plaintiff's breach, also favors a finding of no material breach. The trial court ordered plaintiff to pay $11,629.63 to compensate defendants for the repairs necessitated by plaintiff's operations at Brougham Manor. It was thus possible to fully compensate GIC. The third factor, the extent to which the breaching party has already partly performed, negates a finding of material breach. Plaintiff had already installed the cable system and had begun service when it was prevented from making further repairs. The comparative hardship factor favors plaintiff. Defendants' breach of the contract caused plaintiff to lose existing and potential customers after expending resources to install the cable system. GIC, on the other hand, lost only $11,000 in repairs, largely because of Silvio Giannetti's own failure to cooperate with plaintiff and reach an agreement. The fifth factor, wilfulness of the breach, favors plaintiff. There is no evidence of wilful conduct causing the breach on plaintiff's part. Indeed, the evidence supported a find-

ing that plaintiff was willing to work out an agreement to pay defendants for the necessary repairs, but that Silvio Giannetti refused to cooperate. The sixth factor, the greater or lesser uncertainty that the breaching party will perform the remainder of the contract, also favors plaintiff. The trial court has ordered plaintiff to pay $11,629.63. This establishes a high degree of likelihood that defendants will receive compensation. Hence, we find no error in the trial court's conclusion that there was no material breach.

Affirmed.