# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN HABILITATION & LEARNING
CENTER, INC., and RESIDENTIAL STAFFING
AGENCY,

UNPUBLISHED
July 24, 2018

Plaintiffs-Appellants,

v

No. 338026
Oakland Circuit Court
LC No. 2016-151379-CK

COMMUNITY LIVING SERVICES, INC.,

Defendant-Appellee.

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs, Michigan Habilitation & Learning Center, Inc. (MHLC) and Residential Staffing Agency (RSA), appeal as of right the trial court order granting defendant, Community Living Services, Inc. (CLS), summary disposition under MCR 2.116(C)(10). Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

CLS is a nonprofit organization that contracts with the Detroit-Wayne County Community Mental Health Agency (D-WCCMHA) to serve as the manager of a comprehensive provider network serving individuals with developmental disabilities who receive Medicaid benefits. In that capacity, CLS contracted with MHLC to provide residential services for enrollees at MHLC's group homes. In addition, a number of CLS's enrollees entered into personal services agreements directly with RSA for individualized staffing services. Although CLS was not a party to these agreements, the agreements made it clear that CLS was the entity that would render payment for services to RSA.

The contract between MHLC and CLS required MHLC to comply with extensive staff-credentialing requirements. By way of example, the contract required MHLC to conduct criminal background checks upon hiring new employees and annually thereafter, to ensure that its staff maintained necessary licensing, training, and certifications, and to "maintain all credentialing material in centrally located files." Relevant to the current dispute, Article 13 of the contract provided:

-1-

[MHLC] acknowledges that for any non-compliance with the provisions of this Contract, CLS may, in its sole discretion, impose one or more sanctions, including, but not limited to the following:

* * *

Financial or other sanctions that result in a decrease or suspension of [MHLC's] payments;

* * *

Other sanctions up to and including termination of the Contract, and removal of [MHLC] from the CLS provider network.

Similarly, the contracts between RSA and the enrollees required RSA to satisfy substantially identical staff-credentialing requirements. For example, the contracts required RSA to complete background checks to ensure that the staff was "in good standing with the law" and to ensure that staff providing transportation have a valid driver's license and an acceptable driving record. The agreements also set forth a detailed list of training and certifications that each staff member had to complete and update on a one to three year schedule, and the agreements placed the responsibility to maintaining "a current training record for each employee" on RSA. Finally, the agreements also provided that RSA agrees "that CLS, Inc., in its sole discretion, may suspend or terminate funding for [RSA] if CLS, Inc. has determined that [RSA] has failed to fulfill the terms outlined in this Personal Service Agreement . . . ."

The current dispute arose in June 2014, when MHLC and RSA's former quality assurance employee, Victoria Baughman, notified CLS that several of MHLC and RSA's staff members lacked required credentials, did not have valid driver's licenses, engaged in a variety of misconduct in the workplace, and failed to provide proper care for enrollees in MHLC's group homes. These allegations prompted CLS to undertake a thorough review of MHLC and RSA's operations, including the credentials of their staff. It is undisputed that, during the course of the investigation, MHLC and RSA were unable to produce complete records demonstrating their compliance with the screening, credentialing, or training requirements. Accordingly, CLS sent a written notice to MHLC terminating the contract for residential services effective September 15, 2014. CLS asserted that MHLC had materially breached the contract and noted that despite multiple opportunities to demonstrate its compliance with credentialing requirements, MHLC was "unable to produce appropriate documentation that all staff had received background checks and mandatory training, or possessed valid Michigan drivers' licenses." CLS also terminated all of RSA's personal services agreements with CLS's enrollees effective September 15, 2014, citing RSA's failure to meet credentialing requirements.

After learning of the termination of their contracts, MHLC and RSA continued to seek payment for services rendered before September 15, 2014. In response, CLS advised MHLC and RSA that funding had been suspended for all claims for services rendered through September 15, 2014, for which compensation had not yet been disbursed because they had not demonstrated that *any* of their reviewed staff members met the required credentialing criteria. Still, CLS consented to allow MHLC and RSA to resubmit their claims with additional documentation to

substantiate their claims. The additional information was submitted in January 2015. Again, however, MHLC and RSA were unable to establish that their staff satisfied the credentialing requirements set forth in the applicable contracts, so on April 15, 2015, CLS issued a final determination affirming its suspension of payments to MHLC and RSA.

In February 2016, MHLC and RSA filed a complaint against CLS, asserting claims for breach of contract and unjust enrichment. After discovery, the parties filed cross-motions for summary disposition. Following oral argument on the motions, the trial court granted summary disposition in CLS's favor. MHLC and RSA moved for reconsideration, submitting new documentary evidence in support of its claim that most of their staff met nearly all of the requirements. The court, however, refused to consider the new evidence, and denied the motion for reconsideration.

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

MHLC and RSA argue that the trial court erred by granting CLS summary disposition. Challenges to a trial court's decision to grant or deny summary disposition are reviewed de novo. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). "Under MCR 2.116(C)(10), a party may be entitled to summary disposition if there is no genuine issue with respect to any material fact and the moving party is entitled to judgment as a matter of law." *Stenzel v Best Buy Co, Inc*, 318 Mich App 411, 415; 898 NW2d 236 (2016), vacated in part on other grounds 320 Mich App 801 (2017). A genuine issue of material fact exists if the record, viewed in a light most favorable to the nonmoving party, establishes a matter in which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

### B. ANALYSIS

MHLC and RSA first contend that the trial court erred by summarily dismissing their breach of contract claim. In order to prevail on a claim for breach of contract, MHLC and RSA had to establish that a contract existed, "the other party breached the contract, and the breach resulted in damages." See *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). Here, it is undisputed that pursuant to multiple contracts, CLS was required to pay MHLC and RSA for services provided to developmentally disabled adults, but that they have not paid for some of the services rendered before September 15, 2014.

CLS argues that it is not required to make those payments because MHLC and RSA committed the first substantial breach of the contracts by failing to demonstrate that their staff met the credentialing requirements in the contracts. Under long-standing Michigan law the party "who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Ehlinger v Bodi Lake Lumber Co*, 324 Mich 77, 89; 36 NW2d 311 (1949) (quotation marks and citation omitted). Slight deviations in the performance of a contractual promise will not always negate the other party's reciprocal duty to perform, *Antonoff v Basso*, 347 Mich 18, 28; 78 NW2d 604 (1956), but when the noncomplying

performance amounts to a substantial or material breach of the contract, the breaching party is precluded from maintaining a claim for breach of contract based on the nonbreaching party's subsequent failure to perform. *Baith v Knapp-Stiles, Inc*, 380 Mich 119, 126; 156 NW2d 575 (1968).

The relevant contracts contained numerous requirements pertaining to the qualifications and training of MHLC and RSA's staff members. The staff had to pass criminal background checks, have and maintain valid driver's licenses, complete initial training in a number of areas, and complete additional or refresher training within certain timeframes. MHLC and RSA were required to maintain records of the above credentialing requirements. Prior to terminating the relevant contracts and suspending payment for services already rendered under those agreements, CLS requested that MHLC and RSA provide documentation to substantiate that their staff members met the credentialing requirements. MHLC and RSA provided a number of documents, but admitted that they were unable to establish that all of the credentialing requirements were met by their staff members. Although CLS provided additional opportunities for MHLC and RSA to show that their staff met the credentialing requirements, they were never able to do so, and CLS terminated the contract. At the time the summary disposition motions were filed in January 2017 (over two years after the contracts were terminated for noncompliance with the credentialing requirements), MHLC and RSA were still unable to demonstrate that their staff were qualified and had satisfied all the contractually-mandated training requirements.

Nevertheless, MHLC and RSA argue that because their staff members did, in fact, render services to CLS's enrollees and because no substantial deficiencies with the services were substantiated, they did not substantially breach the respective contracts by failing to ensure that their staff members were properly credentialed. To determine the significance of the initial breach, "the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Giannetti Inv Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997). MHLC and RSA suggest that the purpose of the contracts was merely to provide care to enrollees, which was properly provided by MHLC and RSA, regardless of whether their staff possessed the required credentials.

Review of the relevant contracts, however, demonstrates that the purpose of the contractual arrangements was to facilitate the provision of medically necessary services to CLS's enrollees *by properly qualified and credentialed individuals*. The contracts include multiple sections requiring that the staff providing the services meet specific and enumerated requirements. They also require MHLC and RSA to provide documentation in support of their claims that their staff met the requirements. If the parties had intended only that the services be provided without regard to who provided those services, there would have been no need to include multiple provisions detailing the requirements for the staff in the contracts. Moreover, the deposition testimony taken also makes clear that *who* performed the services was essential to the contract. For instance, a CLS representative testified that when services are performed by staff who lacks the proper credentials, CLS does not submit those claims to D-WCCMHA because those claims are not reimbursable under Medicaid guidelines. In other words, if services are provided by a non-credentialed service provider, funding cannot be secured to pay for those services, notwithstanding the fact that the individual enrollee actually received the services. Thus, even viewing the record in the light most favorable to MHLC and RSA, it is apparent that

an essential part of the contract was the provision of services by individuals who were qualified to provide the services.

MHLC and RSA were unable to establish that during the relevant periods of time even one staff member satisfied all credentialing requirements. Therefore, although MHLC and RSA staff provided services to CLS's enrollee's, there is nothing in the record to support that it was the service contemplated under the relevant contracts, so, as a matter of law, CLS did not obtain the benefit it reasonably expected to receive. See *id*. The trial court did not err by granting CLS summary disposition.[1]

Next, MHLC and RSA argue that the trial court erred by granting summary disposition because CLS did not establish that it sustained damages as a result of their breach of contract. In support, they direct our attention to *Alan Custom Home Inc*, 256 Mich App 505; 667 NW2d 379 (2003). In *Alan*, this Court held that "[t]he party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Id*. at 512. In that case, however, the defendants' counter-claim for breach of contract was dismissed because the defendants could not prove that the plaintiff caused their damages. Here, CLS did not file a claim for breach of contract, so they have no obligation to prove that they sustained damages.[2]

---

[1] Alternatively, MHLC and RSA argue that they substantially complied with the contract because, despite the existence of "gaps" in the records, "most of the staff had almost all of the credentials." In other words, they posit there is a question of fact with regard to whether the missing credentials were so significant as to constitute a substantial breach of the contracts. However, the record reflects that they had over 100 employees and that none of them satisfied all of their credentialing requirements. Further, before their motion for reconsideration, MHLC and RSA made no attempt to demonstrate that the missing credentials were so unimportant that their absence did not prevent CLS from receiving the benefit it reasonably expected to receive under the operative contracts.

[2] Despite determining that CLS did not need to prove damages, the trial court concluded that CLS did, in fact, sustain damages as a result of MHLC and RSA's failure to provide that its staff was properly credentialed. This is supported by testimony from CLS's representatives who testified that, when services are performed by individuals who lack the proper credentials, CLS cannot submit those claims to D-WCCMHA. Furthermore, CLS's representatives testified that CLS's funding is based on the claims it submits to D-WCCMHA. Thus, because MHLC and RSA could not substantiate that its staff had all of the mandated credentials, CLS could not submit the claims to D-WCCMHA, and because it could not submit the claims to D-WCCMHA, CLS could not ultimately receive and/or retain funding for the services provided by individuals who were not properly credentialed. Accordingly, although no CLS representative testified to the "exact" amount of damages caused by the lack of credentials, it is clear that CLS was negatively affected by MHLC and RSA's breach of contract.

Lastly, MHLC and RSA argue that even if the trial court had properly found that they substantially breached the contracts, it erred by dismissing their unjust-enrichment claim because the contracts were effectively rescinded, which requires a return to the status quo, rather than a forfeiture. In order to recover under a theory of unjust enrichment, MHLC and RSA were required to establish two elements: "(1) the receipt of a benefit by defendant from plaintiff[s], and (2) an inequity resulting to plaintiff[s] because of the retention of the benefit by defendant." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). When a party can demonstrate these elements, the law implies a contract to prevent unjust enrichment. *Id*. Yet, a contract cannot be implied when an express contract already addresses the pertinent subject matter. *Id*. In this case, there were express contracts covering the subject matter. Pursuant to those agreements, MHLC and RSA agreed that if they failed to comply with the terms of the contracts, CLS, in its sole discretion, could take a variety of actions, including suspending funding. Thus, there is no basis for the unjust-enrichment claims.

Affirmed. CLS may tax costs as the prevailing party. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra