*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GET LIFTED, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

ON-SITE MANAGEMENT, INC.,

        Defendant/Counterplaintiff-Appellee,

and

MEADOWS ASSISTED LIVING, INC., BANK UNITED, N.A., and THEUT PRODUCTS, INC.,

        Defendants.

UNPUBLISHED
August 6, 2020

No. 349345
Macomb Circuit Court
LC No. 2018-000793-CB

Before: BECKERING, P.J., AND FORT HOOD AND SHAPIRO, JJ.

PER CURIAM.

Plaintiff Get Lifted, LLC (GL), appeals the dismissal of its breach-of-contract case against defendant On-Site Management, Inc (OSM). The trial court dismissed the case on the grounds that GL first substantially breached the parties' contracts by failing to procure general liability insurance and was thus precluded from maintaining an action for breach of contract. We affirm.

## I. BACKGROUND

OSM was the general contractor for the construction of an assisted living facility. OSM hired GL as a subcontractor to perform concrete work on the project. The parties entered into three separate contracts relating to foundational work, the installation of a parking lot, and the pouring of the concrete floor. In December 2017, OSM advised GL in writing that it had "elected to terminate all contracts with [GL]." The stated reason for termination was subpar and untimely work by GL. At that time, GL had completed work on one of the contracts and started work on another. GL brought suit for breach of contract, and OSM countersued for breach of contract.

-1-

OSM subsequently paid GL for its completed work. Thus, all that remained of the complaint was GL's claim for lost profits based on the two contracts that it did not complete before termination.

OSM maintained that its termination of the contracts was not actionable because termination was undertaken after, and in response to, GL's breach of the contracts' quality and time demands. In addition, while the case was pending, OSM learned that GL had not had procured general liability insurance as required by the three contracts. Specifically, three months after GL filed suit, OSM discovered water and mold damage that it attributed to GL's work. OSM's project manager stated that she contacted the insurance carrier listed on the certificate of insurance provided by GL, but was informed by the carrier that the policy did not cover GL. OSM filed an amended counterclaim asserting breach of contract and fraud based on the lack of insurance. OSM later moved for summary disposition under MCR 2.116(C)(10) asserting that GL had committed two "prior breaches": (1) untimely and inadequate work; and (2) the failure to obtain insurance.

The trial court determined that there were questions of fact whether the quality and timeliness of GL's work breached the contracts and OSM does not appeal that ruling. However, the court granted OSM summary disposition of GL's complaint on the grounds that GL first substantially breached the contract by failing to procure and maintain general liability insurance. For the same reason, the court granted OSM summary disposition on its breach-of-contract counterclaim relating to the lack of insurance. The court denied summary disposition of OSM's fraud claim, and the parties later stipulated to dismiss the counterclaim in its entirety.

## II. ANALYSIS

On appeal, GL argues that the trial court erred in granting summary disposition for three reasons. First, GL argues that its failure to procure general liability insurance was not a substantial breach or that there is at least a question of fact on that matter. Second, GL contends that OSM waived enforcement of the insurance provision. Third, GL suggests that the first-breach rule should not apply in this case because OSM did not know of GL's failure to obtain insurance at the time the contracts were terminated. We conclude that the trial court did not err in granting OSM summary disposition.[1]

---

[1] A trial court's decision on a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999), reh den 461 Mich 1205 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). We agree with GL that whether a substantial breach occurred is a question of fact. However, questions of fact can be decided by courts at the summary-disposition stage when reasonable minds could not differ on the conclusion. See e.g., *Brigs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136

## A.  SUBSTANTIAL BREACH[2]

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citation omitted).  This rule only applies when the initial breach is substantial.  *Id*. at 650.  In determining whether a breach is substantial or material, "the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Gianetti Inv Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997).

This case is analogous to *Able Demolition v Pontiac*, 275 Mich App 577, 578; 739 NW2d 696 (2007), in which the plaintiff-contractor was required to obtain pre-approval letters from the defendant-city's legal department before demolishing buildings.  The contractor demolished several buildings but failed to obtain the letters to proceed as required by the contract.  The city declined to make payment and the contractor brought suit.  *Id*. at 580.  We held, in part, that the contractor's failure to obtain pre-approval letters was a substantial breach that precluded the contractor from recovering breach-of-contract damages.  In reaching that conclusion, we reasoned as follows:

> Though the contract contemplated that [the contractor] would perform demolition services for the city, the contract here is more than a mere services contract.  Rather, the contract is a "legal protocol," and, as such, the critical aspect of the agreement is that any demolition be accomplished in strict compliance with the procedures designated by [the city's] legal department to minimize the risk of legal liability and the serious violation of citizens' property rights.  A demolition company must ask the city for a letter on the day of each demolition because, in some cases, a property owner may obtain a last-minute temporary restraining order to prevent destruction of a building.  Clearly, the city insists on the clause to avoid liability for demolitions that should not, legally, go forward. . . .  Because this step is in the contract to protect property rights and to protect the city from exposure to liability, the letter-to-proceed provision is an essential term of the contract and not a mere technicality.  Indeed, the term goes to the heart of the agreement and reflects that the parties understood that the underlying action—the demolition of property— carries with it serious legal implications for all parties.  [*Id*. at 585-586.]

Similar to the plaintiff in *Able*, GL argues that OSM received the benefit of the bargain because GL performed the work required by the contracts until termination.  As the trial court

---

(2007).  See also *1300 LaFayette Eat Coop, Inc v Savoy* 284 Mich App 522, 525; 773 NW2d 57 (2009) ("A question of fact exists when reasonable minds can differ on the conclusions to be drawn from the evidence.").

[2] While the first-breach rule refers to a prior "substantial" breach, this Court has looked to factors used to determine a "material" breach in applying the rule.  See e.g., *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007).  For purposes of this appeal, we will assume that the terms are interchangeable but will use the word "substantial."

reasoned, however, OSM expected satisfactory work *and* "the added protections that insurance provides against significant loss." In other words, the requirement that GL obtain general liability insurance served the same purpose as the pre-approval letters in *Able*, i.e., it protected OSM from liability. GL also argues that OSM did not actually suffer loss because OSM's insurance carrier covered a claim allegedly caused by GL's work. But there is no indication that the defendant in *Able* actually faced liability because of the contractor's failure to obtain pre-approval letters. We read *Able* as standing for the proposition that a breach that exposes a party to potential and significant liability is a substantial breach regardless of whether any damages occur. Further, the contracts required GL to submit a certificate of insurance to OSM, and it is undisputed that GL would not have been hired for the project had OSM known that GL did not have general liability insurance.

Consideration of the other factors used to determine materiality does not persuade us that a question of fact exists as to whether GL's breach was substantial. Those factors "include the extent to which the injured party may be adequately compensated for damages for lack of complete performance, the extent to which the breaching party has partly performed, the comparative hardship on the breaching party in terminating the contract, the willfulness of the breaching party's conduct, and the greater or lesser uncertainty that the party failing to perform will perform the remainder of the contract." *Omnicom*, 221 Mich App at 348, citing *Walker & Co v Harrison*, 347 Mich 630, 635; 81 NW2d 352 (1957).

In theory, a damages award against GL could compensate OSM for any liability it might have incurred due to the lack of insurance. The purpose of insurance policies, however, is to *insure* that the loss, which may be substantial, will be covered. We read the next two factors—partial performance and comparative hardship—as essentially asking whether GL will suffer what amounts to forfeiture if the breach is deemed substantial. Because GL has now been paid for its completed work, it is no longer at risk of forfeiture. Next, there is a question of fact whether GL's failure to obtain insurance was willful. GL's owner's testimony indicates that his other construction company was insured and that the certificate of insurance related to that policy. Thus, GL characterizes its failure to procure insurance as an "administrative error." At best, however, GL's breach was negligent. Lastly, we do not view GL's ability to perform the remainder of the contracts as being relevant to whether the failure to maintain general liability insurance was a substantial breach.

Considering the totality of the circumstances, the trial court correctly determined that GL's prior breach was substantial and that reasonable minds could not differ on that conclusion.

B. WAIVER

GL next argues that OSM waived enforcement of the insurance provision.[3] "[A] waiver is a voluntary and intentional abandonment of a known right." *Quality Prod and Concepts Co v*

---

[3] This issue is unpreserved because it was not raised before the trial court. See *Detroit Leasing Co v Detroit*, 269 Mich App 233, 237; 713 NW2d 269 (2005). Unpreserved issues are reviewed for plain error effecting substantial rights. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817 (2014).

*Nagel Precision, Inc*, 469 Mich 362, 374; 666 NW2d 251 (2003). "[A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Id*. at 372. Because there is no express agreement to waive or modify the insurance provision in this case, the question is whether the parties waived the insurance provision through their course of conduct. See *id*. at 373-374. To establish waiver on those grounds, there must be "clear and convincing evidence" that the parties "knowingly waived enforcement" of a term. See *id*. at 374.

GL fails to show by clear and convincing evidence that OSM voluntarily and intentionally waived the insurance provision. It is undisputed that OSM did not have knowledge of GL's failure to procure and maintain insurance at the time of termination. GL suggests that OSM's failure to make a claim under the insurance policy before termination of the contracts shows an intent to waive that provision. As OSM points out, however, there was no known damage at that time and when it learned of property damage allegedly attributable to GL's work, it attempted to make a claim under the policy. Thus, GL's waiver argument is without merit.

## C. APPLICATION OF THE FIRST-BREACH RULE

Finally, GL emphasizes that OSM did not discover the lack of insurance until after the contracts were terminated. However, GL does not identify, and we could not find, any authority supporting its view that the first-breach rule does not apply when the prior breach was unknown at the time of the other party's subsequent breach. There is some support for GL's argument that the breaching party should be given an opportunity to cure the first breach. See Restatement Contracts, 2d, § 237, p 215 ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."). But it has never been held in Michigan that the first-breach rule applies only when there is an opportunity to cure. Further, even accepting GL's position that the lack of insurance was due to an administrative error, we find it difficult to conclude that GL did not have an opportunity to cure its failure to obtain insurance. And GL does not contend that it could have obtained a "written back" policy to cover the period before termination.

That said, we are concerned by the prospect of allowing contracting parties to justify nonperformance on the basis of later discovered reasons. Specifically, this may encourage a defendant to use discovery to search for prior unknown breaches instead of focusing on the merits of the plaintiff's claims. In certain circumstances, we believe it would be equitable to apply the mend-the-hold doctrine to estop a party from asserting a new reason for nonperformance:

> 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.' [*CE Tackels, Inc v Fantin*, 341 Mich 119, 124; 67 NW2d 71 (1954), quoting *Ralway Co v McCarthy*, 96 US 258, 267-268; 24 L Ed 693 (1877).]

*CE Tackels* involved a subcontractor-general contractor dispute. There, the subcontractor failed to perform and later argued that the general contractor did not accept the offer in a reasonable

time and so there was no contract. *CE Tackels*, 341 Mich at 121. The Supreme Court disagreed with the subcontractor's argument on the merits, but in doing so relied on the fact that the subcontractor did not cite lack of acceptance at the time of nonperformance. *Id*.at 124.

However, we see no grounds to apply the mend-the-hold doctrine in this case. GL affirmatively represented to OSM that it obtained general liability insurance, and GL does not dispute that OSM was acting in good faith when it attempted to make a claim under the policy while litigation was pending. Further, after suit was brought OSM paid GL for its completed work and thus all that remained was GL's claim for lost profits. Those considerations, as well as the substantial nature of GL's breach, convince us that estoppel is not required here.

Affirmed.

/s/ Jane M. Beckering
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro