*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

OUTFRONT MEDIA, LLC,

        Plaintiff-Appellee,

v

CHHC, INC.,

        Defendant/Third-Party Plaintiff-
        Appellant,

and

FIVE STAR OUTDOOR MEDIA, LLC,

        Third-Party Defendant-Appellee.

UNPUBLISHED
March 06, 2025
3:10 PM

No. 368588
Wayne Circuit Court
LC No. 21-015848-CB

Before: MURRAY, P.J., and K. F. KELLY and D. H. SAWYER,* JJ.

PER CURIAM.

Defendant/third-party plaintiff, CHHC, Inc. appeals as of right the trial court's order granting summary disposition to plaintiff, Outfront Media, LLC, and third-party defendant, Five Star Outdoor Media, LLC, under MCR 2.116(C)(8) and (10), and denying CHHC, Inc. summary disposition under MCR 2.116(C)(10). We affirm in part, vacate in part, and remand for further proceedings.

## I. FACTS

This case involves the respective rights of the parties in real property located at 15323 West Eight Mile Road in Detroit (the property). In 2007, the property was owned by Eastside Outdoor, LLC (Eastside). On August 21, 2007, Eastside entered into a lease agreement with CBS Outdoor

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by Assignment.

Inc. (CBS) that permitted CBS to operate a billboard on the property. The lease granted to CBS, in pertinent part, "exclusively . . . the premises . . . for the purpose of erecting, constructing, installing, placing, operating, and maintaining lessee's advertising sign(s) thereon, including supporting structures, illumination facilities and connections, service ladders and other appurtenances and ancillary equipment." The lease was for a term of 20 years beginning September 1, 2007.

The next day, August 22, 2007, Eastside entered into a Perpetual Easement Agreement (easement agreement #1) with JJ, LLC (JJ). Eastside and JJ are affiliated business entities; their common member is Joseph Oram, who signed the agreement on behalf of both Eastside and JJ. Easement agreement #1 provided that JJ had the right "to exclusively construct, install, repair, replace, operate, utilize, lease and/or maintain thereon a billboard sign structure(s), appurtenances, and ancillary equipment.. . . ." on the property. Easement agreement #1 was recorded September 14, 2007.

On September 13, 2007, Eastside and JJ entered into a second Perpetual Easement Agreement (easement agreement #2), which used the same language as easement agreement #1. Easement agreement #2 stated that it was "the final, complete, and exclusive embodiment of [the parties'] agreement regarding the subject matter." Easement agreement #2 was recorded on October 17, 2007.

On July 7, 2010, JJ assigned its interest in easement agreement #1 to VIP Outdoor Media, LLC (VIP). On March 17, 2015, Eastside and JJ rescinded easement agreement #2 by entering into a release agreement. On July 28, 2015, VIP assigned its interest in easement agreement #1 to Five Star Outdoor Media, LLC (Five Star). Five Star's easement was recorded July 31, 2015.

Meanwhile, on February 14, 2013, Eastside conveyed its interest in the property to 15323 West Eight Mile, LLC, which in turn conveyed the property to Walkers Heating and Cooling, Inc on July 16, 2015. In 2021, Wayne County foreclosed on the property for nonpayment of property taxes. A judgment of foreclosure was entered on March 26, 2021, and the property was not redeemed. The judgment of foreclosure stated that "[a]ny recorded or unrecorded interests and all liens are extinguished except for future installments of special assessments and liens or interests recorded by the state or foreclosing government. . . ." The Wayne County Treasurer took title to the property on April 1, 2021, and sold the property at auction to defendant/third-party plaintiff CHHC, Inc. (CHHC) on October 21, 2021.

At the time CHHC acquired the property in October 2021, plaintiff Outfront Media, LLC (Outfront) allegedly was operating the billboard located on the property pursuant to the 2007 lease agreement between Eastside and CBS. Outfront alleges that it is the "successor" to CBS, and thereby successor to CBS's interest in the lease with Eastside. CHHC notified Outfront that because CHHC now was the owner of the property, Outfront's lease payments should be paid to CHHC. Outfront refused, contending that Five Star held the easement to the property where the billboard was located and thereby was the lessor under the lease.

CHHC served Outfront with a notice to quit to recover possession of the property. Outfront in turn filed a complaint against CHHC, alleging that CHHC had no right to evict Outfront from the property because the lease was unaffected by the tax foreclosure. Outfront's complaint

requested that the trial court quiet the title to the property and enter a judgment declaring the parties' respective interests in the property.

CHHC filed a third-party complaint against Five Star, arguing that Five Star's interest in the property was extinguished by the tax foreclosure. After CHHC amended its third-party complaint, Five Star moved for summary disposition of the amended third-party complaint under MCR 2.116(C)(8) and (10). Outfront moved for summary disposition of its initial complaint under MCR 2.116(C)(8) and (C)(10). CHHC moved for summary disposition of both complaints under MCR 2.116(C)(10).

The trial court granted Outfront's and Five Star's motions for summary disposition, while denying CHHC's motion for summary disposition. The trial court held that CHHC's ownership of the property was subject to Five Star's continuing easement under easement agreement #1, which the trial court held was a recorded easement not extinguished by the tax foreclosure under MCL 211.78k. The trial court did not specify Outfront's interest in the property, but granted Outfront's motion while denying CHHC's motion. CHHC now appeals.

## II. DISCUSSION

CHHC contends that the trial court erred by denying its motion for summary disposition and granting summary disposition to Outfront and Five Star. We agree that the trial court erred by granting Outfront's motion for summary disposition, but disagree that the trial court erred by granting Five Star's motion for summary disposition.

## A. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). We also review de novo the interpretation of statutes and legal doctrines, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), and the interpretation of contracts, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). We similarly review de novo a trial court's ruling in a declaratory action. *Smith v Straughn*, 331 Mich App 209, 214; 952 NW2d 521 (2020).

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim, and is warranted when the claim is so unenforceable that no factual development could justify recovery. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). When reviewing a trial court's decision to grant or deny summary disposition under MCR 2.116(C)(8), we consider the motion based on the pleadings alone and accept all factual allegations as true. *Id*.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the claim, and is warranted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Id*. When reviewing a motion for summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. A genuine issue of material fact exists if the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

## B. THE EASEMENT

Under the General Property Tax Act, MCL 211.1 *et seq.*, the government may recover past due taxes, penalties, interest, and fees by forfeiting property to county treasurers, foreclosing after a judicial foreclosure hearing, and selling unredeemed property at public auction. *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 441-442; 952 NW2d 434 (2020). MCL 211.78k(5)[1] imposes certain requirements for the judgment of foreclosure, requiring the judgment of foreclosure to specify, in pertinent part:

> That all existing recorded and unrecorded interests in that property are extinguished [by the tax foreclosure], except a visible or recorded easement or right-of-way, private deed restrictions, interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease, interests in oil or gas in that property that are owned by a person other than the owner of the surface that have been preserved . . . .

In this case, CHHC purchased the property at a foreclosure sale. Five Star claims an easement in the property because on July 28, 2015, VIP assigned its interest in easement agreement #1 to Five Star. JJ had assigned its interest in easement agreement #1 to VIP on July 7, 2010, and JJ in turn had acquired the easement from Eastside when they entered into easement agreement #1 on August 22, 2007. The parties do not dispute that Five Star's easement is recorded. The trial court determined that because Five Star's easement was recorded, it was not extinguished by the tax foreclosure.

CHHC argues that Eastside could not convey to JJ the easement purportedly conveyed by easement agreement #1 because Eastside had already conveyed that same interest to CBS in the August 21, 2007 Lease Agreement. We disagree that the lease agreement prevented Eastside from conveying the easement to JJ. We note first that any interference in the existing leasehold interest caused by the subsequent grant of the easement by easement agreement #1 presents a potential for challenge by the lessee, but not by a third party. That is, CBS and its successors in interest might qualify as real parties in interest to challenge easement agreement #1 if it interfered with the lease, but CHHS would not. See *Pontiac Police & Fire Retiree Prefunded Group Health v Pontiac*, 309 Mich App 611, 622; 873 NW2d 783 (2015) (A plaintiff must assert his or her own legal rights, not the claim to relief of another). In this case, CBS's alleged successor, Outfront, does not challenge the existence of the easement as conflicting with the terms of the lease, and in fact argues that the easement survived the tax foreclosure. In addition, although CHHS correctly notes that some of the rights given to CBS and JJ overlap, there is no indication that Eastside's lease with CBS granted on August 21, 2007, prevented Eastside from conveying to JJ an easement in the property on August 22, 2007.

---

[1] Our Supreme Court found MCL 211.78k(6), "[a]s applied to the limited class of property owners who have been denied due process in this statutory foreclosure scheme . . . unconstitutional." *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich 1, 4; 732 NW2d 458 (2007). This provision is not at issue in this matter.

CHHC also argues that JJ was not able to assign its interest in easement agreement #1 to VIP because easement agreement #1 was rendered invalid by easement agreement #2, which contained an integration clause stating that easement agreement #2 was "the final, complete, and exclusive embodiment of their agreement regarding the subject matter." We disagree.

We interpret the language of an express easement by applying rules similar to those used to interpret contracts, determining the scope and extent of the easement by ascertaining the true intent of the parties at the time the easement was created. *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 400; 964 NW2d 846 (2020). We begin by examining the plain language of the easement, and if the language is clear, we enforce it as written. *Id*. When parties enter into more than one agreement relating to the same subject matter, we ascertain the intention of the parties from all the agreements. *Omnicom of Mich v Giannetti Investment Co*, 221 Mich App 341, 346; 561 NW2d 138 (1997). "If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement." *Id*. at 347.

"[A]n integration clause is widely understood to mean a written contractual term stating that the contract encompasses the entirety of the parties' agreements on a particular matter." *Coosard v Tarrant*, 342 Mich App 620, 635 n 6; 995 NW2d 877 (2022). An integration clause "nullifies all antecedent agreements," *Archambo v Lawyers Title Ins Corp*, 466 Mich 402, 413; 646 NW2d 170 (2002) (quotation marks and citation omitted), which is relevant when the two agreements cover the same subject and include inconsistent terms, see *CMI Int'l Inc v Intermet Int'l Corp*, 251 Mich App 125, 130; 649 NW2d 808 (2002).

In this case, however, the easement agreements are identical; in both agreements Eastside conveyed a perpetual easement to JJ described as: "All of the Burdened Property containing a billboard sign structure pole . . . for the purposes of [JJ] and/or its agents to exclusively construct, install, repair, replace, operate, utilize, lease and/or maintain a billboard sign structure(s) . . . ." Both Agreements contain the same integration clause, which provides that "[i]t is expressly agreed by the parties . . . that this Agreement is intended by the parties to be the final, complete, and exclusive embodiment of their agreement regarding the subject matter of this Agreement . . . ." Because the easement agreements in this case do not contain inconsistent terms, easement agreement #2 did not nullify easement agreement #1. Rather, because the two easement agreements are identical, cover the same subject matter, and do not contain inconsistent terms, the agreements confirm the parties' intent that Eastside convey a perpetual easement to JJ to construct and maintain billboards on the property. See *Omnicom of Mich*, 221 Mich App at 346.

CHHC also contends that the trial court erred because the easement was extinguished by the tax foreclosure. CHHC argues that because the words "recorded easement" and "right-of-way" appear in the same clause, the terms must be read together to mean that the type of easement protected by the statute is an easement granting a right-of-way. Because Five Star's easement was for a billboard, not a right-of-way, CHHC argues it could not survive tax foreclosure. We disagree.

When interpreting a statute, our primary task is to ascertain and give effect to the intent of the Legislature. *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 166; 975 NW2d 52 (2021). When the statutory language is unambiguous, we assume that the

Legislature intended its plain meaning, and we enforce the statute as written. *Id.* The word "or" is "used as a function word to indicate an alternative . . . ." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 872. We conclude that "or" in the statute is unambiguous; it does not, as CHHC suggests, limit easements only to rights-of-way but instead provides rights-of-way as an alternative to general easements. The easement thus did not have to also be a right-of-way to survive tax foreclosure under MCL 211.78k(5)(e). The trial court did not err by determining that Five Star's easement was not extinguished by the tax foreclosure.

## C. THE LEASE

CHHS contends that Outfront's lease was extinguished by the tax foreclosure. Outfront filed its complaint initiating this matter, seeking to quiet title to the property and seeking a declaration that it has the right to maintain its billboard on the property because maintaining the billboard is a permitted activity within the easement held by Five Star.[2] Outfront alleges that it is the successor of CBS in the lease, and for purposes of a motion for summary disposition under MCR 2.116(C)(8), we accept the factual allegations of the pleadings as true.

Outfront moved for summary disposition, requesting that the trial court declare that because Five Star's easement was not extinguished by the judicial foreclosure, Outfront's leasehold interest likewise was not extinguished by the judicial foreclosure. The trial court granted Outfront's motion for summary disposition, though without specifically declaring whether Outfront's interest in the property survived. We disagree that Outfront's lease interest survived the foreclosure.

Subject to exceptions identified in MCL 211.78k, a properly conducted judicial tax foreclosure, followed by a failure to redeem, extinguishes "all existing recorded and unrecorded interests in that property." MCL 211.78k(5)(e). The Legislature's use of the word "all" in the statute indicates the intent to extinguish every type of interest in the foreclosed property not explicitly excepted in the statute. The statute enumerates certain exceptions; regarding leases, only "interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease" survive tax foreclosure. MCL 211.78k(5)(e); see generally *Peterson Fin, LLC v City of Kentwood*, 337 Mich App 460, 484; 976 NW2d 691 (2021). Consequently, the lease agreement with CBS and its alleged successor, Outfront, which does not involve a recorded oil or gas lease, was extinguished by the tax foreclosure.

CHHC argues that the extinguishing of the Lease Agreement results in the easement's purpose no longer existing. We disagree. Although the lease agreement between Eastside and

---

[2] However, the terms of the lease require that the lessee (Outfront) pay specified rent payments to the lessor (Eastside). In its complaint, Outfront alleges that its lease is with the easement holder (Five Star). Five Star similarly argues that the easement agreement transferred to it Outfront's lease. The easement agreement, however, states that the easement holder has the right to lease the property, but does not transfer the existing lease. In fact, the lease provides that the lessor may not transfer its interest in the lease to anyone other than to a party that purchases the underlying fee title of the property, and that the lessor (Eastside) was required by the lease to inform the lessee (Outfront) within seven days if the fee title of the property was transferred to another party.

CBS was extinguished by the tax foreclosure, the easement was not. We note that the easement's purpose was to grant JJ and its successors the exclusive right to construct and maintain *a* billboard, not only Outfront's billboard. We give effect to every word of a contract "while avoiding interpretations that would render any part of the document surplusage or nugatory." *Patel v FisherBroyles, LLP*, 344 Mich App 264, 272; 1 NW3d 308 (2022). We conclude that the easement's purpose survives tax foreclosure, even though Outfront's lease does not.

Outfront suggests that in this case, because a lease is a permitted activity in which Five Star could engage under its easement agreement, the lease was not extinguished if the easement was not. We find no support, however, for the reasoning that because a lease is an allowed activity under an easement, the easement protected the lease from being extinguished by the plain operation of unambiguous statutory language. That is, Eastside could not prevent the lease from being extinguished by foreclosure simply by transferring the lease to an easement holder. And it is axiomatic that an assignee cannot obtain greater rights than the assignor. *Jawad A. Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018). Even if, as Outfront suggests, Eastside transferred the lease along with the easement, where it made its way to JJ, to VIP, and finally to Five Star, Eastside could not shield the lease from being extinguished by the tax foreclosure under the statute.

We affirm the order of the trial court granting Five Star summary disposition of CHHC's third-party complaint, and denying CHHS summary disposition of its third-party complaint. We vacate the judgment of the trial court granting Outfront summary disposition of Outfront's complaint, and remand for entry of an order granting CHHS summary disposition of Outfront's complaint. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ David H. Sawyer