## WALKER & COMPANY v. HARRISON.

1. CONTRACTS—REPUDIATION—MATERIAL BREACH.

　　While repudiation of a contract is one of the weapons available to an injured party in the event the other party has committed a material breach, the injured party makes the determination that the other party has committed a material breach at the peril of himself becoming the aggressor.

2. SAME—MATERIALITY OF FAILURE OF PERFORMANCE—ELEMENTS.

　　Circumstances influencing the determination of the materiality of a failure of performance of a contract include (1) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated; (2) the extent to which the injured party may be compensated in damages for lack of complete performance; (3) the extent to which the party failing to perform has already partly performed or made preparations for performance; (4) the greater or less hardship on the party failing to perform in terminating the contract; (5) the willful, negligent or innocent behavior of the party failing to perform; and (6) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

3. SAME—MATERIALITY OF BREACH—ADVERTISING SIGN—SERVICING.

　　Delay of over 2 months by maker of outdoor advertising sign in sending out a crew and servicing the sign after notice by defendant that someone had splashed a tomato on it and, that there were spiderwebs and rust on it *held,* not such a material breach as to justify defendant in repudiating the contract.

4. SAME—DAMAGES—BREACH OF CONTRACT.

　　Award to plaintiff in nonjury case of damages for breach of contract, repudiated by defendant for an immaterial breach,

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 438 *et seq.*
[2] 12 Am Jur, Contracts § 327 *et seq.*
[3] 12 Am Jur, Contracts § 349 *et seq.*
[4] 12 Am Jur, Contracts § 388.

whereby at termination of 36 months and payment of 36 monthly instalments of "rental," title to an outdoor advertising sign was to pass to defendant, by taking amount of "rentals" accelerated pursuant to contract's terms, less amount servicing by plaintiff would have cost plaintiff during unexpired portion of the agreement *held*, not in error, where such amount, in effect, constituted the cash price of the sign, the services extended and accepted and interest on the amount in default.

Appeal from Genesee; Elliott (Philip), J. Submitted October 2, 1956. (Docket No. 14, Calendar No. 46,646.) Decided February 28, 1957.

Assumpsit by Walker & Company, a Michigan corporation, against Herbert L. Harrison and Mary L. Harrison, doing business as United Cleaners, Teachout Brothers and Teachout Rug Cleaners, for sums due on contract for construction and rental of outdoor display advertising sign. Judgment for plaintiff. Defendants appeal. Affirmed.

*G. Franklin Killeen* and *Howard J. Bueche,* for plaintiff.

*Herman F. Lande,* for defendants.

SMITH, J. This is a suit on a written contract. The defendants are in the dry-cleaning business. Walker & Company, plaintiff, sells, rents, and services advertising signs and billboards. These parties entered into an agreement pertaining to a sign. The agreement is in writing and is termed a "rental agreement." It specifies, in part, that:

"The lessor agrees to construct and install, at its own cost, one 18' 9" high x 8' 8" wide pylon type d.f. neon sign with electric clock and flashing lamps. * * * The lessor agrees to and does hereby lease or rent unto the said lessee the said sign for the term, use and rental and under the conditions, hereinafter

set out, and the lessee agrees to pay said rental.
* * *

"(a) The term of this lease shall be 36 months.
* * *

"(b) The rental to be paid by lessee shall be $148.50 per month for each and every calendar month during the term of this lease;  * * *

"(d) Maintenance. Lessor at its expense agrees to maintain and service the sign together with such equipment as supplied and installed by the lessor to operate in conjunction with said sign under the terms of this lease; this service is to include cleaning and repainting of sign in original color scheme as often as deemed necessary by lessor to keep sign in first-class advertising condition and make all necessary repairs to sign and equipment installed by lessor."

At the "expiration of this agreement," it was also provided, "title to this sign reverts to lessee." This clause is in addition to the printed form of agreement and was apparently added as a result of defendants' concern over title, they having expressed a desire "to buy for cash" and the salesman, at one time, having "quoted a cash price."

The sign was completed and installed in the latter part of July, 1953. The first billing of the monthly payment of $148.50 was made August 1, 1953, with payment thereof by defendants on September 3, 1953. This first payment was also the last. Shortly after the sign was installed, someone hit it with a tomato. Rust, also, was visible on the chrome, complained defendants, and in its corners were "little spider cobwebs." In addition, there were "some children's sayings written down in here." Defendant Herbert Harrison called Walker for the maintenance he believed himself entitled to under subparagraph (d) above. It was not forthcoming. He called again and again. "I was getting, you might say, sorer and sorer.  *  *  *  Occasionally, when

I started calling up, I would walk around where the tomato was and get mad again. Then I would call up on the phone again." Finally, on October 8, 1953, plaintiff not having responded to his repeated calls, he telegraphed Walker that:

"YOU HAVE CONTINUALLY VOIDED OUR RENTAL CONTRACT BY NOT MAINTAINING SIGNS AS AGREED AS WE NO LONGER HAVE A CONTRACT WITH YOU DO NOT EXPECT ANY FURTHER REMUNERATION."

Walker's reply was in the form of a letter. After first pointing out that "your telegram does not make any specific allegations as to what the failure of maintenance comprises," and stating that "We certainly would appreciate your furnishing us with such information," the letter makes reference to a prior collateral controversy between the parties, "wondering if this refusal on our part prompted your attempt to void our rental contract," and concludes as follows:

"We would like to call your attention to paragraph G in our rental contract, which covers procedures in the event of a breach of agreement. In the event that you carry out your threat to make no future monthly payments in accordance with the agreement, it is our intention to enforce the conditions outlined under paragraph G* through the

---

*"(g) Breach of agreement. Lessee shall be deemed to have breached this agreement by default in payment of any instalment of the rental herein provided for; abandonment of the sign or vacating premises where the sign is located; termination or transfer of lessee's interest in the premises by insolvency, appointment of a receiver for lessee's business; filing of a voluntary or involuntary petition in bankruptcy with respect to lessee or the violation of any of the other terms or conditions hereof. In the event of such default, the lessor may, upon notice to the lessee, which notice shall conclusively be deemed sufficient if mailed or delivered to the premises where the sign was or is located, take possession of the sign and declare the balance of the rental herein provided for to be forthwith due and payable, and lessee hereby agrees to pay such balance upon any such contingencies. Lessor may terminate this lease and without notice, remove and repossess said sign and recover from the lessee such amounts as may be unpaid for the remaining unexpired term of this

proper legal channels. We call to your attention that your monthly rental payments are due in advance at our office not later than the 10th day of each current month. You are now approximately 30 days in arrears on your September payment. Unless we receive both the September and October payments by October 25th, this entire matter will be placed in the hands of our attorney for collection in accordance with paragraph G which stipulates that the entire amount is forthwith due and payable."

No additional payments were made and Walker sued in assumpsit for the entire balance due under the contract, $5,197.50, invoking paragraph (g) of the agreement. Defendants filed answer and claim of recoupment, asserting that plaintiff's failure to perform certain maintenance services constituted a prior material breach of the agreement, thus justifying their repudiation of the contract and grounding their claim for damages. The case was tried to the court without a jury and resulted in a judgment for the plaintiff. The case is before us on a general appeal.

Defendants urge upon us again and again, in various forms, the proposition that Walker's failure to service the sign, in response to repeated requests, constituted a material breach of the contract and justified repudiation by them. Their legal proposi-

agreement. Time is of the essence of this lease with respect to the payment of rentals herein provided for. Should lessee after lessor has declared the balance of rentals due and payable, pay the full amount of rental herein provided, he shall then be entitled to the use of the sign, under all the terms and provisions hereof, for the balance of the term of this lease. No waiver by either party hereto of the nonperformance of any term, condition or obligation hereof shall be a waiver of any subsequent breach of, or failure to perform the same, or any other term, condition or obligation hereof. It is understood and agreed that the sign is especially constructed for the lessee and for use at the premises now occupied by the lessee for the term herein provided; that it is of no value unless so used and that it is a material consideration to the lessor in entering into this agreement that the lessee shall continue to use the sign for the period of time provided herein and for the payment of the full rental for such term."

tion is undoubtedly correct. Repudiation is one of the weapons available to an injured party in event the other contractor has committed a material breach. But the injured party's determination that there has been a material breach, justifying his own re-pudiation, is fraught with peril, for should such determination, as viewed by a later court in the calm of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim.

What is our criterion for determining whether or not a breach of contract is so fatal to the undertaking of the parties that it is to be classed as "material"? There is no single touchstone. Many factors are involved. They are well stated in 1 Restatement, Contracts, § 275, in the following terms:

"In determining the materiality of a failure fully to perform a promise the following circumstances are influential:

"(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

"(b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

"(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

"(d) The greater or less hardship on the party failing to perform in terminating the contract;

"(e) The willful, negligent or innocent behavior of the party failing to perform;

"(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

We will not set forth in detail the testimony offered concerning the need for servicing. Granting

that Walker's delay (about a week after defendant Herbert Harrison sent his telegram of repudiation Walker sent out a crew and took care of things) in rendering the service requested was irritating, we are constrained to agree with the trial court that it was not of such materiality as to justify repudiation of the contract, and we are particularly mindful of the lack of preponderant evidence contrary to his determination. *Jones* v. *Eastern Michigan Motorbuses,* 287 Mich. 619. The trial court, on this phase of the case, held as follows:

"Now Mr. Harrison phoned in, so he testified, a number of times. He isn't sure of the dates but he sets the first call at about the 7th of August and he complained then of the tomato and of some rust and some cobwebs. The tomato, according to the testimony, was up on the clock; that would be outside of his reach, without a stepladder or something. The cobwebs are within easy reach of Mr. Harrison and so would the rust be. I think that Mr. Bueche's argument that these were not materially a breach would clearly be true as to the cobwebs and I really can't believe in the face of all the testimony that there was a great deal of rust 7 days after the installation of this sign. And that really brings it down to the tomato. And, of course, when a tomato has been splashed all over your clock, you don't like it. But he says he kept calling their attention to it, although the rain probably washed some of the tomato off. But the stain remained, and they didn't come. I really can't find that that was such a material breach of the contract as to justify rescission. I really don't think so."

Nor, we conclude, do we. There was no valid ground for defendants' repudiation and their failure thereafter to comply with the terms of the contract was itself a material breach, entitling Walker, upon this record, to judgment.

The question of damages remains. The parties, particularly appellants, have discussed at some length whether this contract is one of sale or of lease. Through much of its content it appears merely to be an ordinary lease, but when we come to its end we find that title, without more, is to pass to the "lessee" at the expiration of the agreement. Is the so-called rent merely the payment of a sale price in instalments? We need not, in the light of the terms of the particular contract, and upon the record, vex this question, despite illustrious aid offered us by 2 Williston on Sales (Rev ed), § 336, extensive annotations in 17 ALR 1435, 43 ALR 1257, 92 ALR 323, and 175 ALR 1384, and the comprehensive analysis of Dalzell in 1 Oregon LR 9, "Lease-Contracts as a Means of Conveying Title to Chattels." For the parties before us have agreed, with particularity, as to remedies in event of breach, the remedy here sought, as provided, being acceleration of "rentals" due. The trial court cut down such sum by the amount that service would have cost Walker during the unexpired portion of the agreement (1 Restatement, Contracts, § 335) and as to such diminution Walker does not complain or cross-appeal. Judgment was, therefore, rendered for the cash price of the sign, for such services and maintenance as were extended and accepted, and interest upon the amount in default. There was no error.

Affirmed. Costs to appellee.

DETHMERS, C. J., and SHARPE, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.