79 F.3d 1148
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Amedeo GIZZI, Alberto Elisii, Biagio Farina, and Francesco
Gugino, Plaintiffs-Appellees,
v.
Bogomil MARINOV, Defendant-Appellant.
 No. 94-1983.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1996.
 
 Before: BROWN, WELLFORD, and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Bogomil Marinov appeals the district court's judgment for plaintiffs Amedeo Gizzi, Alberto Elisii, Biagio Farina, and Francesco Gugino in this diversity action under Michigan law arising out of a failed business venture to manufacture high quality gemstones from low quality raw material. On appeal, the issues are (1) whether the district court erred in finding that defendant breached his contract with plaintiffs, (2) whether the district court erred in finding that defendant made fraudulent misrepresentations to plaintiffs, (3) whether the district court erred in finding that defendant breached his fiduciary duty to plaintiffs, and (4) whether the district court's damage award was correct. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 In 1990 and 1991, defendant Marinov and plaintiffs Gizzi, Elisii, Farina and Gugino[1] met to discuss the formation of an enterprise to produce artificial gemstones from natural corundum. Defendant represented to plaintiffs that he had perfected a secret process that could transform low-cost corundum into high quality gemstones (rubies and sapphires) which looked natural. Defendant told plaintiffs that he had already made gemstones of this quality in the past and that the stones which the process produced would be certified by the American Gemological Institute. Defendant further represented to plaintiffs that he had the background and training necessary for this sort of undertaking. He claimed to have a Ph.D. in solid state physics from Lebedeev Institute in Moscow, a medical degree from Superior Medical Institute of Sophia in Sophia, Bulgaria, a medical degree confirmed at Uppsala, Sweden, and a medical degree confirmed at Heidelberg University.
 
 
 3
 In November 1991, the parties established a laboratory in Montana, and in December 1991, they formed the Amrox Corporation, a Michigan corporation. On March 7, 1992, the corporation's stock was issued to the parties in the following amounts:
 
 
 4
 Bogomil Marinov 30,600 shares
 Amedeo Gizzi 10,500 shares
 Francesco Gugino 4,200 shares
 Alberto Elisii 10,500 shares
 Biagio Farina 4,200 shares
 
 
 5
 J.A. 146. On this same day, defendant and plaintiff Gizzi signed a stock subscription agreement and stock purchase agreement, which the other plaintiffs, who were all in Italy, signed later.
 
 
 6
 Plaintiffs assert that, over the course of the unsuccessful venture, they invested approximately $330,000 in the operation and paid defendant's living expenses. However, no stones of the represented quality were ever produced. The parties stipulated that, in August 1992, a disagreement between the shareholders occurred in Italy and defendant Marinov subsequently left the venture. J.A. 146. On September 14, 1992, while defendant was out of the country, plaintiff Gizzi entered defendant's apartment and laboratory and took property that plaintiff Gizzi believed belonged to Amrox.
 
 B.
 
 7
 On October 2, 1992, plaintiffs filed a complaint against defendant in federal district court alleging breach of contract,[2] fraud in the inducement, and breach of fiduciary duty. Plaintiffs also sought injunctive relief. On October 30, 1992, defendant filed a counter-complaint alleging breach of contract and breach of fiduciary duty.
 
 
 8
 The bench trial of the case lasted from May 16, 1994, to May 26, 1994. On August 3, 1994, the district court issued its opinion and order, holding defendant liable for breach of contract, fraud in the inducement, and breach of fiduciary duty. It rendered judgment against defendant in the amount of $291,139.80, plus post-judgment interest pursuant to 28 U.S.C. § 1961 and any costs recoverable under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 54(d)(1). The district court also dismissed defendant's counter-complaint. This timely appeal followed.
 
 II.
 
 9
 Defendant argues that the district court erred in entering judgment for plaintiffs. Specifically, he argues that the district court erroneously found that he breached his contract with plaintiffs, that he made fraudulent misrepresentations to plaintiffs, and that he breached his fiduciary duty to plaintiffs. He further argues that the district court's computation of damages was improper.
 
 
 10
 Pursuant to Fed.R.Civ.P. 52(a), we review findings of fact by a district judge for clear error. A finding of fact is clearly erroneous when, " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). When the findings rest on credibility determinations, Rule 52 demands even greater deference. Anderson, 470 U.S. at 575. However, this court reviews issues of contract interpretation and other issues of law de novo. Lancaster Glass Corp. v. Philips ECG, Inc., 835 F.2d 652, 658 (6th Cir.1987).
 
 
 11
 In its opinion, the district court made extensive findings with respect to credibility. It found "that the witnesses for the plaintiff were straightforward, non-evading, and credible," while, with the exception of one witness, "the witnesses for defendant were not credible." Id. at 119-20. The district court noted a number of instances in which it found defendant Marinov's credibility to be lacking, including the following:
 
 
 12
 Defendant claims he never received his stock certificates in Amrox Corporation, yet he signed a receipt for the stock certificates....
 
 
 13
 Defendant testified that plaintiff Gizzi took 155 kilos of defendant's stones. In answers to interrogatories, defendant claimed that plaintiff Gizzi took 321 kilos. Defendant also testified that he is developing a lineal accelerator which he wishes to sell to the United Nations. This Court finds this testimony absolutely incredible....
 
 
 14
 On direct examination, defendant testified that he did not see the Italian investors in Bulgaria on Saturday, September 5 or Sunday, September 6, 1992. Yet on cross-examination, he testified that he had dinner with the Italian investors at a cousin's home on Saturday, September 5....
 
 
 15
 Defendant now claims that he never withdrew from the corporate venture. Yet defendant admits receiving a letter from an attorney in which it speaks of his withdrawal and asks him to clarify his position or go forward with the venture. Defendant admits he received the letter, but did nothing....
 
 
 16
 Defendant further claims that plaintiff Gizzi gave him cash in the amount of $200 in October 1991 and then an additional $200 in March 1992. This is all of the monies defendant claims he received from plaintiffs. Yet Exhibit 73, in defendant's own handwriting, shows that he received $1,300 in cash on October 22nd and $1,000 in cash on November 6th....
 
 
 17
 Id. at 120-22 (footnote omitted). The court concluded that "[f]or the above reasons, and other inconsistencies too numerous to mention, this Court finds the testimony of defendant Marinov not credible." Id. at 122.
 
 A.
 
 18
 First, we address defendant's argument that the district court erred in finding that he breached the terms of the stock subscription agreement. The stock subscription agreement at issue provided in relevant part:
 
 
 19
 2. Each of the parties brings to the corporation individual skills, talents, and resources.
 
 
 20
 3. The parties rely upon their mutual agreement to contribute these skills, talents, and resources in order for the corporate venture to succeed and each party acknowledges that, but for the promises contained herein, he would not otherwise contribute to the venture.
 
 
 21
 NOW THEREFORE, in consideration of the mutual promises contained herein, the parties agree as follows:
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 2. Each of the parties (exclusive of BOGMIL [sic] MARINOV) has committed to advance to the corporation additional capital in the amount of Four Hundred Thirty Thousand and no/100 Dollars ($430,000.00) in the form of loans or other evidences of indebtedness, upon terms and conditions not less favorable than interest only payable annually at the rate of seven percent (7%) simple annual, principal due on demand, but in no event sooner than two (2) years from the date of the execution of the Note. No bonus, salary increase, dividend, or other distribution may be made to any shareholder prior to the repayment of all loans including accrued interest advanced by shareholders.
 
 
 25
 3. BOGMIL [sic] MARINOV has agreed to contribute to the corporation in exchange for stock in the amount of Thirty Thousand Six Hundred and no/100 Dollars ($30,600.00) and Notes of One Hundred Twenty-Five Thousand Four Hundred and no/100 Dollars ($125,400.00) certain machinery, equipment, inventory, and raw material with the agreed upon value of One Hundred Fifty-six Thousand Dollars. Loans made by BOGMIL [sic] MARINOV shall be made on the same terms and conditions as those applicable to the remaining parties as recited in Paragraph 3.
 
 
 26
 J.A. 51-52.
 
 
 27
 The district court held that defendant breached his contract with plaintiffs by failing to contribute to Amrox Corporation what he had agreed to contribute pursuant to the stock subscription agreement and by withdrawing from the corporation. Defendant contends that these findings are clearly erroneous. He argues that the record shows that he contributed the agreed upon equipment and raw materials and that plaintiffs actually breached the contract by failing to contribute the $430,000 they had agreed to contribute and by removing materials from his laboratory and apartment. He further contends that he did not withdraw from the corporation until after plaintiffs' breach.
 
 
 28
 The law relating to this issue is well-settled. In Walker & Co. v. Harrison, 81 N.W.2d 352 (Mich.1957), the Michigan Supreme Court instructed that the following circumstances are influential "[i]n determining the materiality of a failure fully to perform a promise":
 
 
 29
 (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonable anticipated;
 
 
 30
 (b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;
 
 
 31
 (c) The extent to which the party failing to perform has already partly performed or made preparations for performance;
 
 
 32
 (d) The greater or less hardship on the party failing to perform in terminating the contract;
 
 
 33
 (e) The wilful, negligent or innocent behavior of the party failing to perform;
 
 
 34
 (f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.
 
 
 35
 Id. at 355. Once a party has materially breached a contract, the other party's performance obligations are excused. Ehlinger v. Bodi Lake Lumber Co., 36 N.W.2d 311 (Mich.1949).
 
 
 36
 Therefore, this issue turns on the resolution of the factual issues that the parties dispute. As the district court observed, "The plaintiffs' version of what occurred is diametrically opposed to the defendant's version ...," J.A. 119, and, after searching the record, we find no basis upon which to conclude that the district court's findings were clearly erroneous. Defendant admitted at trial that he did not put the stones in the corporation as he had agreed, and this failure is clearly a breach of the stock subscription agreement. J.A. 262. Furthermore, the district court concluded that "even if it was determined that defendant did put the stones into the corporation, ... the stones had little value, and thus defendant failed to contribute raw material which was of the value he agreed to contribute." J.A. 124-25. We find no evidence which suggests that this finding was clearly erroneous, and therefore this would constitute another breach of the agreement.
 
 
 37
 Finally, the district court found that defendant withdrew from the venture, basing this finding both on the parties' stipulation and the testimony adduced at trial. Defendant does not altogether dispute his withdrawal from the venture, but rather claims that it was justified because plaintiffs breached the agreement first, either by failing to contribute the agreed upon $430,000 or by removing the equipment from his laboratory. We find no merit in either of defendant's arguments. First, defendant testified that plaintiffs had agreed to contribute up to $430,000, and at the time defendant withdrew from the corporation, plaintiffs had contributed approximately $320,000. The district court found that "plaintiffs did everything which was asked of them," J.A. 125, and the only evidence to the contrary is defendant's testimony that he was unable to complete the process because he did not have a high vacuum oven and a tungsten crucible. In light of the district court's determination that defendant was not a credible witness, we find that plaintiffs did not breach the agreement prior to defendant's withdrawal. Furthermore, we agree with the district court that plaintiff Gizzi's removal of material and equipment from defendant's laboratory and apartment occurred only after defendant's withdrawal from the enterprise and therefore did not constitute a breach of the agreement. Thus, we conclude that the district court's finding that defendant breached the stock subscription agreement was correct.
 
 B.
 
 38
 Next, we address defendant's argument that the district court erred in holding that plaintiffs successfully made out their fraud in the inducement claim. Under Michigan law, in order to made out a fraudulent inducement claim, plaintiffs must prove: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." Hi-Way Motor Co. v. International Harvester Co., 247 N.W.2d 813, 816 (Mich.1976).
 
 
 39
 The district court found that defendant made material misrepresentations with respect to both his educational qualifications and his perfected process for producing high-quality gemstones. The district court concluded that the only educational degree that the defendant produced evidence of was an M.D. degree from the Medical Institute of Sophia, and defendant pointed out nothing that persuades us that this conclusion was clearly erroneous.
 
 
 40
 The district court further found that defendant misrepresented to plaintiffs that he had a "perfected process." The district court stated: "It appears to this Court that defendant has some knowledge of gemstones and was trying to perfect a process to make natural looking stones out of small sapphires, but he had never really perfected it. What he was doing was hoping and trying to do it and using other peoples' money with the false statement that he had already done it." J.A. 128 n. 4 (emphasis in original). The district court relied on the facts that defendant had attempted a similar scheme with investors in Virginia and that, during the course of the scheme, Dr. Joel Arem, one of the investors who had a Ph.D. from Harvard University, had confronted defendant prior to plaintiffs' investment. Therefore, the district court concluded that plaintiff knew that his representation regarding his "perfected process" was false when he made it, and we agree.
 
 
 41
 We find no error in the district court's conclusion that all the elements of a fraud claim were present. Defendant made two material representations that were false, and he knew they were false at the time he made them. It also is clear that defendant made these misrepresentations in order to induce plaintiffs to invest with him and that plaintiffs' decisions to invest were based on his background and his ability to produce the high-quality stones. Finally, it is clear that plaintiffs were injured by defendant's fraud. We therefore conclude that the district court did not err in holding defendant liable for fraud in the inducement.
 
 C.
 
 42
 Defendant also argues that the district court erred in holding that he breached his fiduciary duty to plaintiffs. Although defendant argued before the district court that plaintiffs lacked standing to sue on this claim, he argues on appeal only that "[f]or the same reasons that the Court came to its clearly erroneous conclusions regarding the breach of contract claim and the fraud claim, the Trial Court is mistaken that defendant breached his fiduciary duty." Brief of Defendant at 18. Having determined that the district court's conclusions with respect to the breach of contract and fraud claims were not in error, we conclude that the district court correctly held that defendant breached his fiduciary duty to plaintiffs.
 
 D.
 
 43
 Finally, defendant argues that the district court erred in its award of damages to plaintiffs. The district court awarded damages to plaintiffs in the amount of $291,139.80. This amount included the $270,139.80 that it found to be Amrox's total expenditures and the $21,000 in expenses plaintiffs incurred for attorneys, winding up the corporation, and storing certain equipment. Defendant contends this award is erroneous because it fails to take into account the value of the materials and equipment that plaintiffs have in their possession. Defendant's claim is essentially that plaintiffs could have mitigated their damages by selling the equipment in their possession. However, under Michigan law, "[t]he defendant bears the burden of proving a failure to mitigate." Lorenz Supply Co. v. American Standard, Inc., 300 N.W.2d 335, 339 (Mich.Ct.App.1980). Although defendant testified regarding the value of the materials and equipment, the district court found that his testimony was not credible. Therefore, he did not meet his burden of proving a failure to mitigate, and we find no error in the district court's damage award.
 
 III.
 
 44
 For the reasons stated, the judgment of the district court is AFFIRMED in all respects.
 
 
 45
 WELLFORD, Circuit Judge, concurring in part and dissenting as to part II.D. only:
 
 
 46
 Plaintiffs admit that they removed "material and equipment from defendant's laboratory and apartment" after defendant repudiated the venture. Although the district court found that the stones seized by plaintiffs "had little value," the confiscated property clearly had some value. In my view, fairness requires that plaintiffs' damage award be reduced to account for this.
 
 
 47
 Under Michigan law, in both contract and tort actions, "an injured party must make every reasonable effort to minimize damages." Bak v. Citizens Insurance Co., 503 N.W.2d 94, 97 (Mich.Ct.App.1993) (emphasis added). In Bak, the Michigan Court of Appeals emphasized and approved "the sound principle of mitigation of loss " under the common law. Id. at 98; see King v. Taylor Chrysler-Plymouth, Inc., 457 N.W.2d 42, 46 (Mich.Ct.App.1990). If a litigant can show some failure to mitigate, but the amount cannot be precisely ascertained, he should be entitled to some recovery. See Lorenz Supply Co. v. American Standard, Inc., 300 N.W.2d 335, 340 (Mich.Ct.App.1981), aff'd, 358 N.W.2d 845 (Mich.1984).
 
 
 48
 In determining damages, the district court apparently never considered offsetting the award for the value of defendant's property confiscated by the plaintiffs. Additionally, defendant's answer and counterclaim assert that personal property of substantial value was removed by plaintiffs "without his permission and against his wishes" from his premises in Montana. Again, without discussion of this issue, the district court simply dismissed defendant's counterclaim. While defendant may have the burden of proving a failure to mitigate, there is simply no discussion and no finding on this question by the trier of fact.
 
 
 49
 Therefore, I respectfully dissent from part II.D. of the majority opinion. I would remand to the district court with instructions to determine the value of defendant's property confiscated by plaintiffs and to reduce plaintiffs' damage award accordingly.
 
 
 
 [1]
 Plaintiff Gizzi is a citizen of Michigan, while plaintiffs Elisii, Farina, and Gugino are all Italian citizens. The parties stipulated that defendant was, at the time of the filing of the complaint, a citizen of Montana and is now believed to be a citizen of Virginia
 
 
 [2]
 Plaintiffs claimed that defendant breached both the stock purchase agreement and the stock subscription agreement that all the parties signed. Because the stock purchase agreement contained an arbitration clause, the parties submitted this portion of their dispute to arbitration. The arbitrator concluded that defendant breached the stock purchase agreement and ordered all of defendant's Amrox stock to be transferred to plaintiffs. The arbitrator also found that because this stock had no value, plaintiffs did not have to pay for the stock. In December 1993, the district court entered an order adopting the arbitration award and granting injunctive relief. Therefore, only plaintiffs's breach of contract claim based on the stock subscription agreement is relevant to this appeal