*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARROW GROUP, INC.,

      Plaintiff-Appellant,

v

ETHAN D. DUNN, JOSHUA C. CASTMORE, and
MAXWELL DUNN, PLC,

      Defendants-Appellees.

UNPUBLISHED
August 17, 2023

No. 361465
Wayne Circuit Court
LC No. 20-010870-NM

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

Plaintiff, Farrow Group, Inc., appeals by right the trial court's order granting defendants, attorneys Ethan D. Dunn, Joshua C. Castmore, and law firm Maxwell Dunn, PLC, summary disposition of plaintiff's legal malpractice claim brought after plaintiff accepted the case evaluation award in its underlying lawsuit against North Corktown Venture, LLC (NCV), because defendants recommended plaintiff accept it and incorrectly advised plaintiff that its equitable claims in that action would remain for adjudication but were dismissed with prejudice upon acceptance. Defendants admitted in this action that they provided incorrect advice in the underlying action and breached the applicable standard of care, but defended on the ground that plaintiff could not prove that defendants' malpractice proximately caused it damages. Because we conclude there are numerous questions of fact, the trial court erred when it granted defendants' motion for summary disposition. We therefore reverse.

## I. BACKGROUND FACTS

Plaintiff contracted with NCV to demolish buildings located at 3300 Trumbull, Detroit, Michigan, remove debris, and clean the site. The contract identified Odell Jones, III, of DH Construction Management, LLC, as the dispute resolution "Initial Decision Maker" and as the owner's representative, and Michael Farrow as plaintiff's representative. Section 14 of the contract permitted NCV to terminate for cause or for convenience. Section 14.1.3 provided the consequence of termination for convenience:

-1-

If the Owner terminates the Contract for convenience in accordance with Article 14 of AIA Document A201-2017, then the Owner shall pay the Contractor a termination fee as follows:

\* \* \*

Contractor shall be entitled to fifteen percent (15%) of the costs to complete the Work, in accordance with the same requirements imposed prior to termination, as estimated by the Owner's Representative or an agreed upon third-party.

Article 16 of the contract enumerated the contract documents and § 16.1 specified that the agreement had multiple documents including under § 16.1.3 that AIA Document A201-2017, General Conditions of the Contract for Construction applied. The AIA Document A201-2017, General Conditions of the Contract for Construction document provided in Article 10, that the contractor shall take reasonable precautions for safety and shall protect against damage, injury, or loss to persons who may be affected and other adjacent properties such as walks, pavements, roadways, structures, and utilities. § 10.2.1.1-.3. Further, the contractor had an ongoing obligation to comply with all "applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on the safety of persons or property or their protection from damage, injury or loss. § 10.2.2. Under § 14.3 of the AIA Document A201-2017, General Conditions of the Contract for Construction document, the owner could give notice in writing and "suspend, delay or interrupt the Work in whole or in part for such period of time as the Owner may determine." Section 14.4 provided that the owner could terminate the contract for convenience and stated as follows:

§ 14.4.1 The Owner may, at any time, terminate the Contract for the Owner's convenience and without cause.

§ 14.4.2 Upon receipt of written notice from the Owner of such termination for the Owner's convenience, the Contractor shall

.1 cease operations as directed by the Owner in the notice;

.2 take actions necessary, or that the Owner may direct, for the protection and preservation of the Work; and

.3 Except for Work directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.

§ 14.4.3 In case of such termination for the Owner's convenience, the Contractor shall be entitled to receive payment for Work executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the Work not executed.

The City of Detroit Buildings, Safety Engineering and Environmental Department issued a wrecking permit for plaintiff's demolition, debris removal, and backfilling to grade level of the 3300 Trumbull property, on August 16, 2017, with an expiration date of February 16, 2018.

Plaintiff commenced work and proceeded with the project. On January 24, 2018, Jones told Farrow that NCV issued a stop work order to plaintiff because of budget issues. Barry Ellentuck, who owned ADR Consultants, Inc., a company retained by plaintiff to assist with project management, corresponded with Jones via e-mail advising him that, because of the demolition permit, plaintiff had the obligation to complete the work to Detroit's specifications. Ellentuck stated that work on the site had to resume on Monday February 19, 2018. Plaintiff resumed working on-site and NCV terminated the contract for convenience. Jones e-mailed Farrow to advise him of the contract's termination. Ellentuck corresponded with Jones regarding issues related to unpaid invoices, the condition of the site, and that plaintiff could not simply abandon the site without consequences to itself and NCV. Plaintiff worked until it considered the site safe for its demobilization and departure from the site. Plaintiff invoiced NCV for work performed at the property but NCV did not pay. Plaintiff and NCV disputed whether plaintiff should have continued under the circumstances and what NCV owed plaintiff. On April 16, 2018, plaintiff asserted a claim of lien against the 3300 Trumbull property and recorded a construction lien in the amount of $536,778.65.

In May 2018, plaintiff sued NCV to foreclose its construction lien against the 3300 Trumbull property related to NCV's failure to pay the balance due for the labor and materials to perform demolition services on the property. In addition to its lien foreclosure claim, plaintiff also asserted a claim for unjust enrichment and a breach of contract claim. Plaintiff alleged that NCV owed it $536,778.65, plus 15% of the costs to complete the work required under the contract, pursuant to § 14.1.3 of the contract.

The court required the case be submitted to case evaluation. Just before the case evaluation hearing, defendants substituted into the case as plaintiff's counsel in the underlying action. Castmore represented plaintiff at the case evaluation hearing. The case evaluators issued their case evaluation decision and awarded plaintiff $175,000. Defendants advised plaintiff to accept the case evaluation award. Plaintiff did so, believing defendants' advice that its equitable claims would remain for adjudication after acceptance of the case evaluation award. NCV also accepted the case evaluation decision. The court in the underlying action dismissed plaintiff's case in its entirety with prejudice.

On August 24, 2020, plaintiff filed this legal malpractice action against defendants alleging that, based upon defendants' professionally negligent advice that it could accept the case evaluation award in the underlying action and pursue its equitable claims against NCV, plaintiff accepted the case evaluation award. Plaintiff alleged that the court ruled that the mutual acceptance of the award ended the underlying litigation. Plaintiff alleged that defendants' malpractice directly and proximately caused it to lose its claims under § 14.1.3 of the contract resulting in the loss of its damages claim for the contractual termination fee and that plaintiff lost its claim for unpaid work performed at the property. Plaintiff alleged that defendants' acts and omissions constituted professional negligence and the violation of duties owed to plaintiff that caused it the loss of claims and monetary damages.

Defendants moved for summary disposition under MCR 2.116(C)(10) and argued that, had plaintiff not accepted the case evaluation award in the underlying action, it would not have recovered more than the $175,000 case evaluation award because it would not have prevailed on its claims. Defendants asserted that plaintiff breached the terms of the NCV contract by continuing

to work after NCV terminated for convenience because plaintiff had the obligation to cease work and do no more than necessary to preserve and protect the site but it kept working. Defendants contended that plaintiff's breach meant that plaintiff could not receive the contractual termination fee and at most at trial could have recovered $71,379.41, for two pre-termination invoices, an amount far less than the case evaluation award. Defendants contended that plaintiff, therefore, could not establish the proximate cause element of its legal malpractice claim entitling defendants to summary disposition. Plaintiff opposed the motion by arguing that defendants' witnesses' testimonies establish that NCV did not expect plaintiff to just walk off the site after the stop work order. Plaintiff relied on Farrow's and Ellentuck's expertise in the demolition industry and their knowledge of the requirements to make the site safe and contended that plaintiff did what was reasonable and appropriate to protect the public. Plaintiff argued that its underlying case had not been lost because of the issues raised in defendants' motion but occurred because of defendants' legal malpractice. Plaintiff asserted that genuine issues of material fact remained for trial regarding how much of plaintiff's work after the stop work order was appropriate to make the site safe for demobilization. Plaintiff contended that it had a legal obligation to do the work it performed on-site and deserved to be paid for it, and would have succeeded on its claims and recovered in excess of the case evaluation award.

At the hearing on defendants' motion, defendants argued that plaintiff did not have valid causes of action in the underlying action, and even if defendants committed malpractice, plaintiff did not suffer harm, so it could not establish the proximate cause element of its legal malpractice claim. Defendants admitted that Castmore committed malpractice by incorrectly advising plaintiff but argued that the malpractice did not cause plaintiff damages. Plaintiff argued that genuine issues of fact existed regarding the necessity of work it performed after the stop work order to take the debris piles down below the site's barrier height and to remediate asbestos and do other things to protect and preserve the worksite to enable it to demobilize and leave the site. The trial court stated that it had heard enough and advised the parties that it would grant defendants' motion. The court opined that the legal professional negligence did not rise to the level where the court "should come in and, and grant or allow this case to go any, any further. So for the reasons that the Court has stated and what counsel has stated in terms of what should have been done, done, the Court doesn't—is, is granting the motion for summary disposition." The trial court entered an order granting defendants summary disposition and dismissed the case with prejudice for the reasons stated on the record. Plaintiff now appeals.

## II. STANDARD OF REVIEW

We review de novo a circuit court's summary disposition decision. *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. The movant must specifically identify the matters which have no disputable issue of fact and then support its position with documentary evidence. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). The party opposing the motion must then establish with evidence that a

genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 160; 516 NW2d 475 (1994) "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Reasonable inferences from the record evidence should be considered in addition to the record evidence. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). "For purposes of MCR 2.116(C)(10), a trial court is not allowed to weigh the evidence, assess credibility, or resolve factual disputes." *Highfield Beach at Lake Michigan v Sanderson*, 331 Mich App 636, 653; 954 NW2d 231 (2020) (citation omitted).

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting defendants summary disposition because genuine issues of material fact remained in dispute precluding summary disposition. We agree.

In *Bowden v Gannaway*, 310 Mich App 499; 871 NW2d 893 (2015), this Court explained the elements of a legal malpractice claim. A plaintiff must prove:

> (1) the existence of an attorney-client relationship;
>
> (2) negligence in the legal representation of the plaintiff;
>
> (3) that the negligence was a proximate cause of an injury; and
>
> (4) the fact and extent of the injury alleged.
>
> To prove proximate cause, a plaintiff must show that but for the attorney's alleged malpractice, he would have been successful in the underlying suit. [*Id*. at 503-504 (quotation marks and citations omitted).]

The second element requires proof that the defendant breached a professional standard of care. *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 52-53; 951 NW2d 64 (2020). Professional malpractice claims ordinarily require expert testimony to establish the applicable standard of care and that the defendant breached that standard. *Id*. at 53. An attorney "must only act as would an attorney of ordinary learning, judgment, or skill under the same or similar circumstances." *Simko v Blake*, 448 Mich 648, 650; 532 NW2d 842 (1995). An attorney has a duty to exercise reasonable skill, care, discretion, and judgment in the conduct of the cause and representation of his or her client. *Id*. at 656.

Just like negligence actions, the third element requires the plaintiff to prove "that the defendant's action was a cause in fact of the claimed injury." *Charles Reinhart Co v Winiemko*, 444 Mich 579, 586; 513 NW2d 773 (1994). The plaintiff in a legal malpractice action must establish that he or she would have been successful in the underlying matter but for the attorney's malpractice. *Id*. "In other words, the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding." *Id*. (quotation marks and citation

omitted). That is, "but for the attorney's alleged malpractice, he would have been successful in the underlying suit." *Id*. (quotation marks and citation omitted). When alleged malpractice "is focused on malpractice occurring during litigation or settlement negotiations, then proximate cause often is an issue of fact." *Id*. at 590-591 n 22 (citations omitted). A claim of malpractice requires a showing of actual injury, not just the potential for injury. *Colvert v Conybeare Law Office*, 239 Mich App 608, 619-620; 609 NW2d 208 (2000). Proximate causation is a required element of a negligence claim. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "To establish proximate cause, the plaintiff must prove the existence of both cause in fact and legal cause." *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). Cause in fact requires the plaintiff to "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 647-648 (quotation marks and citation omitted). "To establish legal cause, the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Id*. at 648 (quotation marks and citation omitted; alterations in original). Causation is an issue typically reserved for the trier of fact unless there is no dispute of material fact. *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003).

In this case, the parties do not dispute that an attorney-client relationship existed or the applicable standard of care, and defendants admitted that they breached the standard of care by negligently representing plaintiff in the underlying action by incorrectly advising plaintiff that its acceptance of the case evaluation award would not dispose of plaintiff's equitable claims including its construction lien claim. Plaintiff, therefore, established the first two elements of its legal malpractice claim.

Having conceded their commission of legal malpractice, defendants dispute that their negligence proximately caused plaintiff any injury. To prove proximate cause, plaintiff had to prove that, but for defendants' malpractice, it would have been successful in the underlying suit. In that action, plaintiff sued NCV to foreclose on its construction lien asserted in relation to the labor and materials furnished to NCV for improving the property and sought entry of a lien judgment ordering the sale of the property under MCL 570.1121. Plaintiff also stated a claim for unjust enrichment alleging that it furnished labor and materials in connection with improvement of the property that provided NCV a benefit that it would be unjust to allow NCV to retain without paying plaintiff. Plaintiff also sued NCV for breach of contract to recover money it contended NCV owed but failed to pay in relation to providing labor and materials to the project under the parties' contract, plus the contract termination fee of 15% of the cost of the project's completion.

During the underlying litigation, before plaintiff's claims were adjudicated, defendants were retained and stepped in to provide plaintiff legal representation. They substituted into the case for plaintiff's previous counsel shortly before the parties to that lawsuit participated in case evaluation on February 20, 2019. Neither plaintiff's original counsel nor defendants moved nor

sought a stipulation before case evaluation to exempt plaintiff's equitable claims from case evaluation as permitted under MCR 2.403(A)(3).[1] The case evaluators awarded plaintiff $175,000.

After case evaluation in the underlying case, defendants advised plaintiff that it could accept the case evaluation award and continue litigating its remaining claims. Defendants recommended that plaintiff accept the award. Plaintiff accepted the case evaluation award on the basis of that recommendation. NCV also accepted the case evaluation decision. The trial court in the underlying case, therefore, dismissed the entire action. Under MCR 2.403(M)(1), "the court shall dismiss the action with prejudice" and such "judgment or dismissal shall be deemed to dispose of all claims in the action . . . ."

Defendants admit their professional negligence but argue that plaintiff materially breached its contract with NCV by continuing to work after NCV issued a stop work order and after its demolition permit expired. Defendants contend that plaintiff's breaches precluded it from payment of its post-termination invoices or its contractual termination fee and that it recovered more from the case evaluation award than it would have gained from litigation of the underlying action. Defendants contend that, at most, plaintiff may have recovered payment of two pre-termination invoices totaling $71,379.41. Defendants argue that plaintiff's legal malpractice claim failed because it could not prove proximate causation, i.e., that defendants' negligence caused it any damages.

The record reflects that defendants neglected to investigate and understand that under MCR 2.403(A)(3), equitable claims could be exempted from case evaluation. Defendants also neglected to file a motion or seek a stipulation to exempt those claims. Then, after case evaluation, defendants neglected to understand and properly inform plaintiff of the consequences of accepting that case evaluation award. Plaintiff's acceptance of the case evaluation award based upon defendants' mistaken and professionally negligent advice resulted in its loss of its two equitable claims, the right to seek recovery on its construction lien and obtain a judgment ordering the sale of the property to satisfy the lien, and the right to seek recovery under the alternative unjust enrichment theory. Moreover, had plaintiff rejected case evaluation, its breach of contract claim would not have been resolved and plaintiff would have been able to litigate that claim as well for its determination on the merits. That claim included all unpaid invoices and the contractual termination fee.

Defendants argued to the lower court in this case and argue to this Court that plaintiff's equitable claims were essentially the same and derivative of its breach of contract claim, and they contend that plaintiff would not have prevailed even on the breach of contract claim in the

---

[1] The provisions stated in MCR 2.403(A)(3) are now featured in MCR 2.403(A)(4). The rule provides:

> A court may exempt claims seeking equitable relief from case evaluation for good cause shown on motion or by stipulation of the parties if the court finds that case evaluation of such claims would be inappropriate.

underlying action. In *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 561-562; 886 NW2d 113 (2016), our Supreme Court explained:

> Under Michigan law, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related. A contract is a necessary prerequisite to a construction lien. A construction lien stems from the underlying contract, and its amount is determined by the contract's terms. These principles are reflected throughout the [Construction Lien Act, MCL 570.1101 *et seq*]. In essence, the lien is but a means for enforcing the payment of the debt arising from the performance of the contract. A party may proceed to enforce its lien through foreclosure while simultaneously seeking recovery based on the contract from which the lien arose. But there can only be one satisfaction. Thus, a lien foreclosure claim and a claim for breach of the underlying contract are integrally related, and allowing a party to pursue both merely gives it a better chance of recovering what it is owed. [Quotation marks, citations, and alteration omitted.]

Plaintiff's first count in the underlying action sought foreclosure of the construction lien it recorded in the Wayne County Register of Deeds on April 16, 2018, in which it asserted that the contract amount was $2,498,747.15, that it received payment on the contract totaling $1,961,968.50, and that the lien on the 3300 Trumbull property equaled $536,778.65, the unpaid amount, plus interest. Such claim involves the Construction Lien Act, MCL 570.1101 *et seq*. "It has long been recognized that construction lien laws serve two purposes: to protect the right of lien claimants to payment for wages or materials and to protect owners from paying twice for such services." *M D Marinich, Inc v Mich Nat'l Bank*, 193 Mich App 447, 453; 484 NW2d 738 (1992) (citation omitted). MCL 570.1117 provides construction lien claimants the right to bring an action for enforcement of a construction lien through foreclosure. MCL 570.117(5) permits lien claimants to maintain an action on any contract from which the lien arose in the same action. MCL 570.1118(1) specifies that a construction lien foreclosure action must be brought in the circuit court for the county where the real property is located and that such foreclosure action is equitable in nature. Under MCL 570.118(2), in such action the circuit court must examine each claim and defense and determine the amount, if any, due the lien claimant. MCL 570.1120 specifies the damages recoverable including "compensation for as much as was performed by the claimant under the contract, in proportion to the price stipulated for complete performance of the whole contract, less any payments made to the lien claimant and also to any additional damages which the lien claimant may be entitled to as a matter of law." MCL 570.1121 provides in relevant part:

> (1) If the court finds that a lien claimant is entitled to a construction lien upon the real property to which he or she furnished an improvement, and the amount adjudged to be due has not been paid, the court may enter a judgment ordering the sale of any interest in the real property, or a part of the real property, to which the construction lien attaches. . . .

Plaintiff's second count in the underlying action sought recovery under a theory of unjust enrichment. To prove unjust enrichment, the plaintiff must show "(1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64;

836 NW2d 898 (2013). An implied contract prevents unjust enrichment but only in the absence of an "express contract covering the same subject matter." *Id*.

Equitable claims are determined by the court. *New Products Corp v Harbor Shores BHBT Land Dev, LLC*, 308 Mich App 638, 651-652; 866 NW 2d 850 (2014); see also *Madugula v Taub*, 496 Mich 685; 853 NW2d 75 (2014). A court of equity must state its specific findings of fact and conclusions of law on the record. *Id*. at 716-717.

Plaintiff's third count stated a claim for NCV's breach of contract. To prevail on a claim for breach of contract, a plaintiff must establish by a preponderance of the evidence that (1) a contract existed between the parties, (2) the other party breached the contract, and (3) the breach caused damages to the party claiming breach. *Bank of Am, NA v First Am Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016). The plaintiff must establish a causal link between the breach of contract and the claimed damages. *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 118-19; 839 NW2d 223 (2013). "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601-02; 865 NW2d 915 (2014) (citation omitted).

In the underlying action, in relation to its construction lien foreclosure claim, plaintiff sought the court's determination of the amount due plaintiff pursuant to its lien and asked the court to order the sale of the property under the Construction Lien Act and order payment from the proceeds of the sale. It sought a monetary judgment in the amount of $536,778.65 for its unjust enrichment claim. In relation to its breach of contract claim, plaintiff requested a monetary judgment against NCV in the amount of $536,778.65 for NCV's default of payment for labor and materials plus an additional sum equal to 15% of the cost to complete the work.

Examination of the record in this case establishes that plaintiff presented evidence that a cost-plus contract existed between it and NCV respecting demolition of the 3300 Trumbull property requiring NCV to pay for the labor and materials expended by plaintiff in performance of its contractual obligations. Plaintiff presented evidence that NCV failed to pay plaintiff the full amount plaintiff billed. The proceedings in the underlying action did not result in the determination of contested specific facts regarding damages, legal or equitable, the validity and amount of plaintiff's construction lien, or whether plaintiff could assert a viable unjust enrichment claim. Further, the underlying action left undetermined whether plaintiff was entitled to the claimed contractual damages and the contractual 15% termination fee, and if so, in what amount. In this case, plaintiff presented evidence that NCV failed to pay invoices for work performed by it before NCV terminated the contract for convenience. Plaintiff also presented evidence that, after the stop work order issued, it had to continue performing work because of the dangerous conditions on the property and the presence of hazardous materials that required work to prevent airborne dissemination to the surrounding neighborhood. Plaintiff presented evidence that work had to be performed to prevent damage to adjacent sidewalks and roads. Farrow's, Ellentuck's, and Jones's testimonies supported plaintiff's contention that it performed work for which it was entitled to payment and that NCV refused to pay it. Documentary evidence also supported plaintiff's claim for monetary damages in excess of the case evaluation award.

The bone of contention respecting whether plaintiff would have prevailed in the underlying action and done better than the amount awarded from the case evaluation, but for defendants' legal malpractice, requires determination whether and to what extent plaintiff had to perform the work it undertook after the stop work order and termination of the contract. Farrow's and Ellentuck's testimonies, and even Jones's testimony, established that plaintiff had to perform certain work to prepare and protect the site before plaintiff demobilized and left. Farrow's and Ellentuck's testimonies, support plaintiff's position that the circumstances required performance of all of the work for which plaintiff billed NCV. Jones's testimony agreed in part with their testimonies but he questioned the necessity of the extent of the work plaintiff performed. However, he did not specify what plaintiff did that exceeded what was required. His testimony does not set forth how plaintiff should have limited its work under the circumstances presented by the site at the time he issued the stop work order or thereafter. To the extent he contradicted Farrow's and Ellentuck's testimonies, a question of fact obviously remained for adjudication. Even defendants' expert's testimony supported plaintiff's position that the dangerous conditions on the site necessitated continued work for which plaintiff should have been compensated. He opined that plaintiff could perform all necessary work in one week at a cost of only around $50,000. The expert's opinion testimony sharply contrasts with Farrow's and Ellentuck's testimonies and establishes that a question of fact remained for trial on the type and amount of work necessary to prepare and protect the work before demobilizing and leaving the site, and the amount for which plaintiff should have been compensated for it. The record in this case does not demonstrate that no dispute existed regarding these facts. Further, plaintiff established that genuine issues of material fact remained regarding what aspects of the site were safe and what were not necessitating work, what the city required before plaintiff could leave the site, how long the necessary work would and should take, and how much plaintiff should be compensated for such necessary work. The evidence presented by plaintiff established that, in the underlying action, plaintiff would have prevailed on its breach of contract claim and its construction lien claim, but genuine issues of fact remained regarding the extent of the work necessary to fulfill its obligations and the amount of damages to which plaintiff was entitled for such work it performed. The existence of such issues precluded granting defendants summary disposition in this case.

The issue whether plaintiff's acceptance of the case evaluation award provided plaintiff more than what it could or would have been able to recover, had it been able to proceed with its entire suit to a final adjudication on the merits, was not conclusively established. Plaintiff presented evidence from which a jury could conclude that NCV breached the contract and owed plaintiff monetary damages in excess of the case evaluation award. The record in this case establishes that the trial court did not view the evidence in a light most favorable to plaintiff, the nonmoving party. Rather, the trial court accepted defendants' expert's opinions and discounted Farrow's and Ellentuck's testimonies, and even Jones's testimony favorable to plaintiff.

Defendants' argument that plaintiff materially breached the contract by continuing to work negating any right it had to recover in the underlying action lacks merit. Under Michigan law, a contracting party may repudiate its contractual obligations if the other party "has committed a material breach." *Walker & Co v Harrison*, 347 Mich 630, 635; 81 NW2d 352 (1957). Claiming that there has been a material breach justifying repudiation "is fraught with peril, for should such determination, as viewed by a later court in the calm of its contemplation, be unwarranted, the repudiator [] will have been guilty of material breach and [] have become the aggressor, not an innocent victim." *Id*. In *Walker*, our Supreme Court explained how to determine whether a breach

constituted a material breach and applied the factors stated in Restatement of the Law of Contracts § 275, which provides:

> In determining the materiality of a failure fully to perform a promise the following circumstances are influential:
>
> (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;
>
> (b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;
>
> (c) The extent to which the party failing to perform has already partly performed or made preparations for performance;
>
> (d) The greater or less hardship on the party failing to perform in terminating the contract;
>
> (e) The wilful, negligent or innocent behavior of the party failing to perform;
>
> (f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract. [*Id*. (quotation marks and citation omitted).]

"[T]he court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive." *Omnicom of Mich v Giannetti Inv Co*, 221 Mich App 341, 348; 561 NW2d 138 (1997). In *Omnicom*, this Court reviewed the record and applied the factors articulated in *Walker* and held that they favored finding that no material breach had occurred. *Id*. at 348-349.

In this case, defendants invoked § 14.4.2 of the AIA Document A201-2017, General Conditions of the Contract for Construction to argue that once NCV issued the stop work order plaintiff had to cease operations and only take minimum actions necessary for the protection and preservation of the work. The contract, however, does not specify what actions are necessary for the protection and preservation of the work. The parties in this case dispute what plaintiff had to do before demobilizing and leaving the site and what actions were necessary for the protection and preservation of the work. Review of AIA Document A201-2017, General Conditions of the Contract for Construction reveals that in Article 10, the contract specifies that the contractor shall take reasonable precautions for safety and shall protect against damage, injury, or loss to persons who may be affected and other adjacent properties such as walks, pavements, roadways, structures, and utilities. § 10.2.1.1-.3. Further, the contractor had an ongoing obligation to comply with all "applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on the safety of persons or property or their protection from damage, injury or loss." § 10.2.2.

Under the contract, plaintiff had the obligations to take reasonable precautions prevent damage, injury, or loss to any persons and to adjacent properties. Farrow and Ellentuck testified that the actions plaintiff took after the stop work order were undertaken for precisely those reasons

-11-

and they recognized that the site's condition at that time posed unreasonable risks of harm to persons and adjacent properties.

The record demonstrates that plaintiff presented evidence sufficient to establish a question of fact whether it would have received a higher recovery had it rejected the case evaluation award and proceeded to trial on all three claims in its complaint. Whether a jury in this case would accept the proofs of damages in the suit within the suit portion of the claim is, of course, unknown at this time. However, the record establishes that there were proofs of damages to present in the underlying case that, if accepted, could have resulted in a much larger judgment. Thus, plaintiff has established a question of fact as to the "fact and extent" of its damages, sufficient to survive summary disposition on its claim of legal malpractice.

Plaintiff also argues that the trial court applied a degree of malpractice standard that does not comport with Michigan law. The trial court stated that the malpractice did not rise to a level where the court believed the case should go any further. The trial court failed to articulate what that meant. We decline to speculate as to the court's rationale for granting summary disposition. Nevertheless, it is apparent that the trial court failed to consider all of the evidence in a light most favorable to the nonmoving party and made credibility determinations regarding the witnesses' testimonies. In so doing, the trial court failed to discern the genuine issues of material fact and committed reversible error.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick

-12-